CLEATA HALL, Plaintiff-Appellant, v. THE VILLAGE OF BARTONVILLE POLICE DEPARTMENT *et al.*, Defendants-Appellees.

Third District    No. 4—97—0935

Opinion filed July 31, 1998.

Todd A. Strong (argued), of Warren E. Danz, P.C., of Peoria, for appellant.

John P. Fleming (argued), of Schmidt & Fleming, of Peoria, for appellees Village of Bartonville Police Department and Ron Hartzell.

JUSTICE LYTTON delivered the opinion of the court:

Officer Ron Hartzell of the Bartonville police department was pursuing a truck driven by Chad Courtwright, when the truck collided with a car driven by Cleata Hall. Courtwright died, and Hall was injured. Hall filed suit against the officer and department, alleging violations of department procedures, willful and wanton conduct, and

reckless disregard for the safety of others.[1] The department and officer filed a motion for summary judgment (735 ILCS 5/2—1005 (West 1996)), and the trial court granted the motion.

On appeal, Hall asserts that: (a) the trial judge erred in granting summary judgment because a genuine issue of material fact exists as to whether Officer Hartzell's conduct constituted reckless disregard for the safety of others, (b) in chasing Courtwright at such high speeds, the officer "provided the fuel behind the rocket," and (c) the officer had the option of halting the chase and locating the driver through the truck's license plate number. We affirm.

■ A motion for summary judgment should be granted only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1996); *Wells v. Enloe*, 282 Ill. App. 3d 586, 589, 669 N.E.2d 368, 371 (1996). When reviewing an order granting summary judgment, this court conducts a *de novo* review. *Jewish Hospital v. Boatmen's National Bank*, 261 Ill. App. 3d 750, 755, 633 N.E.2d 1267, 1272 (1994).

## FACTS

On September 2, 1994, Officer Hartzell witnessed the lights flashing on and off on a truck heading eastbound on Route 24, near Bartonville, Illinois. The truck was dark in color, and Hartzell feared that another vehicle might hit it. The officer then observed the truck weave in its lane, cross the white lines, and almost hit a guard rail. Hartzell thought he had probable cause to believe that the driver was under the influence of alcohol or drugs. The officer activated his lights and siren in an attempt to initiate a stop of the vehicle.

The truck, driven by Chad Courtwright, pulled into the parking lot of the Jubilee Trucking Company. The officer noted the truck's license plate number. The truck then accelerated and headed westbound on Route 24, its tires squealing and throwing gravel. Officer Hartzell followed and chased the truck through Bartonville at 90 miles per hour; speeds eventually reached 105 miles per hour. During the chase, the truck weaved between lanes, and the squad car was approximately six car lengths behind the truck. Hartzell considered terminating the pursuit, but seconds later the truck collided with Hall's car.

## DISCUSSION

■ The parties disagree as to the appropriate standard of care to

---

[1]Hall also filed suit against Kingston Mines Homecoming Corporation and Claudia Tinney, but they are not parties to this appeal.

be applied to an officer engaged in the pursuit of a fleeing suspect. Plaintiff asserts that under the Illinois Vehicle Code (Code) (625 ILCS 5/1—100 *et seq.* (West 1994)), the issue is whether an officer was "reckless." Specifically, although sections 11—205(b) and (c) of the Code authorize drivers of emergency vehicles to exceed the speed limit while pursuing suspects (625 ILCS 5/11—205(b), (c) (West 1994)), section 11—205(e) states that the driver is not protected "from the consequences of his reckless disregard for the safety of others" (625 ILCS 5/11—205(e) (West 1994)).

■ Defendants, on the other hand, rely on the "willful and wanton" standard found in the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/1—101 *et seq.* (West 1994)). Section 2—202 of the Act provides that a public employee is not liable for his act or omission in the execution or enforcement of any law unless that act or omission constitutes willful and wanton conduct. 745 ILCS 10/2—202 (West 1994). "Willful and wanton conduct" is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1—210 (West 1994). Section 2—109 provides that where an employee of a local public entity is not liable for injuries, then the public employer is not liable. 745 ILCS 10/2—109 (West 1994).

The appellate court is divided over the relationship between these statutory provisions. In *Postich v. Henrichs*, 267 Ill. App. 3d 236, 244, 641 N.E.2d 975, 980 (1994), the court stated that while section 11—205(e) of the Vehicle Code affects the issue of comparative liability in suits filed by drivers of emergency vehicles, it does not purport to limit the applicability of sovereign immunity. In a different case filed by an injured party against a municipality (*Bradshaw v. City of Metropolis*, 293 Ill. App. 3d 389, 688 N.E.2d 332 (1997)), the majority held that the specificity of the Vehicle Code's provisions should prevail over the general protections found in the Tort Immunity Act (*Bradshaw*, 293 Ill. App. 3d at 395, 688 N.E.2d at 335). One justice dissented on the ground that the Vehicle Code's duty-of-care provisions were not intended to alter the laws of sovereign immunity. *Bradshaw*, 293 Ill. App. 3d at 395, 688 N.E.2d at 336 (Maag, J., dissenting).

We need not resolve the dispute as to whether the reckless standard or willful and wanton standard should apply in pursuit cases. Under either standard, the facts presented in this case show that the officer did not disregard the safety of others. The officer observed conduct that led him to reasonably believe that the truck driver was under the influence of alcohol or drugs. Faced with this apparent danger to public safety, he decided to intervene.

The Illinois Supreme Court has declared that driving under the influence is "a serious problem in Illinois" and that drunk drivers pose "a substantial threat to the welfare of the citizenry of Illinois." *People v. Bartley*, 109 Ill. 2d 273, 286, 285, 486 N.E.2d 880, 886, 885 (1985). Drunk driving is particularly disturbing because it results in the loss of innocent life. *Bartley*, 109 Ill. 2d at 286, 486 N.E.2d at 885-86. Indeed, the supreme court has determined that "the carnage caused by drinking and then driving is so serious it warrants both types of apprehension—stopping automobiles which are being driven erratically and roadblocks to detect drunken drivers before they drive in an erratic manner." *Bartley*, 109 Ill. 2d at 287, 486 N.E.2d at 886.

In *Breck v. Cortez*, 141 Ill. App. 3d 351, 360, 490 N.E.2d 88, 94 (1986), the appellate court held that where an officer was confronted with reckless driving by a driver under the influence, "a failure on the part of the police to act would have presented a substantial threat to public safety. [A]ll high speed pursuits of suspected law violators involve risk to other motorists and pedestrians on the road."

■ Here, in addition to the seriousness of the truck driver's perceived condition, we cannot ignore several other important facts. These include: (1) the officer activated his lights and sirens; (2) the chase occurred on a four-lane highway; (3) the location of the chase was not a densely populated urban area; (4) the weather was clear; (5) the road was dry; and (6) the duration of the chase was relatively brief. Given these circumstances, the officer did not act in disregard for the safety of others.

When evaluating claims for pursuit-related injuries, Illinois courts have expressed policy concerns about unduly restricting the authority of police to pursue suspects. In *Urban v. Village of Lincolnshire*, 272 Ill. App. 3d 1087, 1096, 651 N.E.2d 683, 689 (1995), the court expressed reluctance to "tie the hands" of police officers where a suspect-driver's conduct creates danger for himself and others. In *Laco v. City of Chicago*, 154 Ill. App. 3d 498, 506, 507 N.E.2d 64, 69 (1987), the court said that to hold that police should discontinue pursuit of speeders and reckless drivers might result in a situation where drivers know that all they need to do is go faster and there will be no chase.

Given the dangers of high-speed pursuit, we may have declined to engage in such a chase if we were in Officer Hartzell's position; indeed, we question whether the officer would do so if given another opportunity. Yet, the benefit of hindsight and the luxury of deliberation give us pause. When confronted with a motorist's decision to flee, an officer's response is often "instinctive." *County of Sacramento v. Lewis*, 523 U.S. 833, 855, 140 L. Ed. 2d 1043, 1063, 118 S. Ct. 1708, 1721

(1998).[2] "While prudence would have repressed the reaction, the officer's instinct was to do his job as a law enforcement officer, not to induce [the suspect's] lawlessness, or to terrorize, cause harm, or kill". *Lewis*, 523 U.S. at 855, 140 L. Ed. 2d at 1063, 118 S. Ct. at 1721. The officer and department are entitled to judgment as a matter of law.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BRESLIN and SLATER, JJ., concur.

---

[2]In *Lewis*, the United States Supreme Court held that when a death results from a police pursuit, a plaintiff filing suit under 42 U.S.C. § 1983 (1982) must show that the officer's conduct shocks the conscience—a standard that "points clearly away from liability." *Lewis*, 523 U.S. at 853, 140 L. Ed. 2d at 1062, 118 S. Ct. at 1720. Comparing the decision to pursue a fleeing suspect with that of confronting a prison riot, the Court stated:

> "A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other hand, the high-speed threat to everyone within the stopping range, be they suspects, their passengers, other drivers, or bystanders." *Lewis*, 523 U.S. at 853, 140 L. Ed. 2d at 1062, 118 S. Ct. at 1720.