2019 IL App (1st) 181419

FIRST DISTRICT
SIXTH DIVISION
August 16, 2019

No. 1-18-1419

| | | |
|---|---|---|
| KELLY WINSTON, Individually and as Mother and Next Best Friend of Kayla Winston and Kyla Winston, | ) ) ) | Appeal from the Circuit Court of Cook County |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 15 L 10981 |
| | ) | |
| THE CITY OF CHICAGO, ASA MYERS, MELISSA BURCHETT, THE ESTATE OF GLENN JONES, and THE ESTATE OF DALILA SMITH, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | Honorable |
| | ) | Kathy M. Flanagan |
| (The City of Chicago, Asa Myers, and Melissa Burchett, Defendants-Appellees.) | ) ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1    This is an appeal from the partial disposition of a personal injury action by plaintiff, Kelly Winston, individually and as mother and next friend of Kayla and Kyla Winston (plaintiffs or the Winstons), against defendants, the City of Chicago (City), Asa Myers, and Melissa Burchett (City police officers or City officers), who we shall refer to collectively as the City defendants. The action arose from a collision between the vehicle occupied by the Winstons and a vehicle driven by Glenn Jones and owned by Dalila Smith as the City police officers were pursuing that vehicle. Plaintiffs also sued the estates of Jones and Smith, which we shall refer to collectively as the estate defendants. The circuit court granted the City defendants' motion for

summary judgment, and plaintiffs contend on appeal that summary judgment for the City defendants was erroneous. For the reasons stated below, we reverse the summary judgment and remand for further proceedings.

¶ 2                                    I. JURISDICTION

¶ 3     The circuit court granted summary judgment for the City defendants on March 19, 2018, in an order finding that there was no just reason to delay appeal. Plaintiffs timely filed a motion for reconsideration on April 18, 2018, which the court denied on June 4, 2018. Plaintiffs timely filed their notice of appeal on July 2, 2018. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and Illinois Supreme Court Rules 303(a)(1) (eff. July 1, 2017) and 304(a) (eff. Mar. 8, 2016).

¶ 4                                    II. BACKGROUND

¶ 5     Plaintiffs filed their initial complaint in October 2015 and amended it in July 2016 and August 2016. Various counts of the complaint as amended were directed against the City defendants, while other counts were directed against the estates of Jones and Smith. We are concerned here with the counts directed against the City defendants.

¶ 6     Plaintiffs alleged that, on April 10, 2014, the vehicle they occupied was struck by Smith's vehicle as Jones was driving it with Smith's permission and as the City officers were pursuing it for fleeing a traffic stop for driving without a front license plate. Specifically, plaintiffs alleged that the City officers followed the Smith vehicle after noticing the missing front plate until they tried to curb it, whereupon "Jones drove off at a very high rate of speed" with the City officers pursuing for at least four blocks "at an extremely high rate of speed" through a residential area on a two-lane street posted for no more than 30 miles per hour while "Jones ignored several traffic devices" until he failed to stop for a red light and struck the Winstons' vehicle. Plaintiffs

alleged that the City officers "knew that Jones had not committed a felony and that his actions did not pose a significant threat of death or serious physical injury to the officers or others." Plaintiffs alleged that the City and its employees, including the City officers, had a duty to refrain from willful and wanton conduct that would endanger the safety of persons such as plaintiffs and that the City defendants breached that duty by (a) pursuing Jones at a high rate of speed for a minor traffic violation, (b) failing to reduce speed or end the chase after Jones ignored several traffic control devices, and (c) failing to reduce speed or end the chase despite the risk that the vehicle driven by Jones would collide with another vehicle such as the Winstons' vehicle. Each of the Winstons was alleged to have "serious bodily injury" caused by the collision and proximately caused by the City defendants' willful and wanton conduct.

¶ 7    In their answer, the City defendants admitted that the City officers acted within the scope of their employment during the incident and that they tried to curb the vehicle Jones was driving for a traffic stop but otherwise denied the substantive allegations against the City defendants.

¶ 8    The City defendants raised five affirmative defenses, all asserting that a local public entity is not liable for an injury resulting from an act or omission of a public employee who is immune or not liable. The first defense was that the City police officers were enforcing the law before and during the incident, and by statute, public employees are not liable for negligence in enforcing the law. The second was that the City police officers were acting within the scope of their employment before and during the incident, that "the fleeing offender caused the injuries" at issue, and that, by statute, a public employee acting within the scope of employment is not liable for an injury caused by the act or omission of another person. The third was that public employees, such as the City police officers acting within the scope of their employment, are immune by statute from liability for failure to provide adequate police services (here,

apprehending Jones before and during the incident). The fourth was that public employees, such as the City police officers acting within the scope of their employment, are immune by statute from liability for attempting to enforce the law and failing to do so successfully. The fifth was that public employees, such as the City police officers acting within the scope of their employment, are immune by statute from liability for failing to successfully effect an arrest.

¶ 9 The City defendants also raised a counterclaim for contribution against the estate of Jones, alleging his negligence in causing the incident.

¶ 10 Plaintiffs answered the City defendants' affirmative defenses, admitting that the City officers were acting within the scope of their employment and enforcing the law before and during the incident but denying the statutory immunities alleged in all five affirmative defenses.

¶ 11 In their answer, the estate defendants denied, or demanded strict proof of, the substantive allegations against Jones and Smith. They did not raise any affirmative defenses.

¶ 12 The City defendants filed a motion for summary judgment in October 2017, arguing that the City officers performed a traffic stop of the vehicle owned by Smith and driven by Jones because it had a missing front license plate. Jones drove away from the traffic stop at high speed. The officers "initially followed, but then ceased actively attempting to apprehend Jones when he accelerated to a dangerous speed." The officers used their emergency lights and siren, and they decided to cease pursuit when their vehicle reached about 55 miles per hour and the pursued vehicle was going about 70 to 80 miles per hour. Three blocks after the stop, while the officers were "in the process of" ending their pursuit, Jones ran a red light and collided with the Winstons' vehicle. The entire incident from the traffic stop to the collision took about 20 seconds. The City defendants argued that the discovery evidence viewed in the light most

favorable to plaintiffs showed that the City officers were neither a proximate cause of the collision nor willful and wanton in their actions.

¶ 13    The City defendants noted that various pieces of evidence produced in discovery and attached to the motion bore out that the chase lasted about 20 seconds, including the police vehicle's video camera and police radio traffic. As to the latter, the officers reported by radio that the vehicle they were stopping "took off," the dispatcher spoke, and the officers reported that a collision occurred as soon as the dispatcher stopped speaking. Both City officers testified in depositions that, during the pursuit, they were traveling at about 55 miles per hour while the pursued vehicle was traveling at about 70 to 80 miles per hour. Smith and Jones died from the collision and were unable to be deposed. The City defendants argued from the aforesaid evidence that plaintiffs could not prove that the City officers acted willfully or wantonly, nor prove that their actions or omissions proximately caused plaintiffs' injuries.

¶ 14    Plaintiffs responded to the motion for summary judgment, not disputing the aforesaid evidence but adding that Officer Myers testified to being aware on the day of the incident of Chicago Police Department General Order G03-03-01 (Chi. Police Dep't G.O. G03-03-01 (eff. June 1, 2003)), which governs police pursuits. Plaintiffs noted that said order, a copy of which was attached to their response, prohibits motor vehicle pursuits whenever the most serious offense for which a vehicle is wanted is a nonhazardous traffic offense. Plaintiffs argued that it was arguably foreseeable to the City officers that a collision could result from their pursuit and that a police department rule can constitute some evidence of willful and wanton conduct so as to present an issue for a jury to decide. Plaintiffs argued that deposition testimony that Smith's vehicle fled the stop at high speed "is simply pretextual in an attempt to justify a prohibited pursuit that should never have been initiated."

¶ 15    The City defendants replied in support of their motion, arguing that plaintiffs had not addressed their proximate cause argument and arguing that violation of police rules or guidelines does not constitute negligence, much less willful and wanton conduct.

¶ 16    On March 19, 2018, the court granted summary judgment for the City defendants. After summarizing the parties' arguments and discussing various cases concerning police pursuits, the court found that the evidence

> "shows that while the police officers exceeded the speed limit, they drove up to 55 miles per hour, whereas the Jones vehicle being pursued was driving 70-80 miles per hour. Further, the evidence also shows that the pursuit lasted only 20 seconds for about three blocks, at some distance behind the offender, lights and sirens were operating, and the police were self-terminating the pursuit just as the collision occurred. The facts here do not evince a reckless pursuit by the police officers. While the area was residential, the pursuit was short in distance, the police did not drive at excessive speeds, the traffic was moderate, lights and sirens were activated, and they were in radio contact with dispatch. There is nothing in the record which raises a question of fact as to the police officers' recklessness."

The court noted that it need not address the issue of proximate cause but nonetheless found that plaintiffs

> "failed to show proximate cause as a matter of law. The evidence shows that the officers never reached the speed of Jones's vehicle and were in the process of terminating the pursuit when he collided with the Plaintiffs' vehicle. The evidence also shows that Jones disregarded traffic control devices and drove at excessively high speeds. The officers' actions did not proximately cause the collision at issue

as it was Jones's acts in fleeing the officers, disregarding traffic control devices, speeding, and failing to avoid the collision that proximately caused the Plaintiffs' injuries."

The order stated that the case continued against the estate defendants, and it included a finding that there was no just reason to delay enforcement or appeal of the order.

¶ 17    Plaintiffs filed a motion to reconsider the summary judgment on April 18, 2018, arguing that the court "erroneously applied existing law to the facts of this case." The court denied the motion to reconsider on June 4, 2018, noting that plaintiffs "fail[ed] to provide either argument or evidence to support their position." This appeal timely followed.

¶ 18                                    III. ANALYSIS

¶ 19    On appeal, plaintiffs contend that summary judgment for the City defendants was erroneous. Said judgment found that plaintiffs failed to show willful and wanton conduct by the City officers and proximate causation with regards to the City defendants.

¶ 20                                    A. General Law

¶ 21    Either a plaintiff or a defendant may file a motion for summary judgment in a civil case. 735 ILCS 5/2-1005(a), (b) (West 2018). Summary judgment is proper only when the pleadings, depositions, affidavits, and other matters in the record establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.* § 2-1005(c). The record is construed strictly against the movant, and summary judgment is inappropriate if reasonable people could draw conflicting inferences from undisputed facts. *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. We review a grant of summary judgment *de novo*. *Id.*; *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17.

¶ 22    Section 2-202 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1-101 *et seq.* (West 2018)) provides that a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." *Id.* § 2-202. The Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Id.* § 1-210. Section 2-109 of the Act provides that a "local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." *Id.* § 2-109. The Act is in derogation of the common law and is construed strictly against a public entity or employee seeking immunity. *Monson*, 2018 IL 122486, ¶ 15. While a plaintiff has the burden of proving his or her cause of action, including the defendant's duty and breach of that duty, the immunities in the Act are affirmative defenses and a defendant asserting immunity under the Act has the burden of proving that immunity. *Id.* ¶ 23.

¶ 23    Whether a defendant's conduct was willful and wanton is generally for a jury to decide. *Cohen*, 2017 IL 121800, ¶ 27. However, summary judgment is appropriate if (1) discovery has been completed and the pleadings, depositions, affidavits, and the like in the record would have constituted all the evidence before the trial court, and (2) upon such evidence, there would be nothing for a jury to decide and the trial court would be required to direct a verdict. *Id.*

¶ 24    In an action for negligence, including when the defendant's alleged conduct was willful and wanton, a plaintiff must prove that the defendant owed a duty to the plaintiff, the defendant breached this duty, and the breach was the proximate cause of the plaintiff's injuries. *Stanphill v. Ortberg*, 2018 IL 122974, ¶ 33; *Freeman v. City of Chicago*, 2017 IL App (1st) 153644, ¶ 37. While proximate cause is generally a question of fact for a jury, the court may decide it as a

matter of law if the facts show that the plaintiff would never be entitled to recover. *Stanphill*, 2018 IL 122974, ¶ 34; *Freeman*, 2017 IL App (1st) 153644, ¶ 37. Proximate cause is a matter of foreseeability; that is, conduct is a proximate cause of an injury if a reasonable person would foresee such an injury as a likely result of that conduct. *Stanphill*, 2018 IL 122974, ¶ 34; *Freeman*, 2017 IL App (1st) 153644, ¶ 40. An intervening or independent cause does not preclude or disprove a defendant's proximate causation where that intervening cause was itself a foreseeable or reasonably anticipated result of the defendant's actions. *Stanphill*, 2018 IL 122974, ¶ 35; *Suwanski v. Village of Lombard*, 342 Ill. App. 3d 248, 255 (2003).

¶ 25                                    B. Pursuit Cases

¶ 26    This court has previously considered claims against municipalities or counties and their police officers arising from a collision between a vehicle being pursued by police and a vehicle occupied by third-party or uninvolved plaintiffs or their decedents.

¶ 27    In *Hall v. Village of Bartonville Police Department*, 298 Ill. App. 3d 569, 570-71 (1998), the Third District considered a case where the plaintiff claimed that the officer acted against department procedures as well as willfully and wantonly. This court did not expressly address the effect of police procedures but held that summary judgment for the police was appropriate because the officer did not disregard the safety of others in his pursuit. *Id.* at 572. This court considered it decisive that the pursued driver was suspected of driving under the influence, the chase was on a four-lane highway and not in a densely populated area, and the chase was "relatively brief." *Id.* at 573. However, *Hall* does not quantify how brief that chase was.

¶ 28    In *Suwanski*, the Second District of this court reversed a summary judgment for a municipality on the grounds that genuine issues of material fact were presented on both willful and wanton conduct and proximate cause. This court noted that a "police pursuit is unique in the

sense that it can occur only if two vehicles are involved, the car that is fleeing and the car that is chasing. It is essentially symbiotic; both vehicles are necessary to have a chase." *Suwanski*, 342 Ill. App. 3d at 255-56. Thus, "a jury could also find under these facts that it was reasonably foreseeable that chasing the [pursued] vehicle at high rates of speed through residential and commercial suburban streets, knowing [it] was running stop signs and red lights, would result in injury to some third person." *Id.* at 256. As to willful and wanton conduct,

> "We beg[a]n our analysis by observing that in the context of police pursuits there exists a wide array of factual possibilities which create a range of conduct that will fall somewhere on the spectrum of liability. Some situations will be so benign as to clearly be, as a matter of law, below the theoretical minimum for willful and wanton conduct. Those cases should, of course, be disposed of by summary judgment. There may also be some cases where the circumstances are so egregious that one could say, as a matter of law, that the officer acted willfully and wantonly. The third possibility is those circumstances where the question of willful and wanton conduct is the subject of reasonable argument. It is those cases that cannot be decided as a matter of law and must be put to the jury." *Id.* at 257.

Supporting summary judgment were the undisputed facts of

> "clear weather and dry roads, the time of day, the day of the week, the light traffic conditions, and the facts that the driver of the vehicle was committing a Class 2 felony, the vehicle was weaving, and the pursued vehicle was, at least for some of the distance, dropping debris onto the roadway." *Id.*

Against summary judgment were the undisputed facts of

> "the nature of the area, namely, suburban, residential, and commercial, the length of the pursuit being 6.5 miles, the duration of the pursuit being over 8 minutes, and the facts that the pursued vehicle was running stop signs and red lights, there was a near collision and an actual collision related to the pursuit, the speeds increased as the chase progressed and reached 100 miles per hour, the fact that the vehicle was no longer dropping debris onto the roadway, and the fact the driver was suspected only of a nonviolent, property-based felony." *Id.* at 257-58.

Whether the officer complied with police pursuit policy was open to interpretation, and whether the pursued driver was under the influence was a question of fact. *Id.* at 258-59. This court concluded that summary judgment for the municipality was inappropriate.

¶ 29 In *Shuttlesworth v. City of Chicago*, 377 Ill. App. 3d 360 (2007), officers stopped a car when the occupants were not wearing safety belts, and the license plate was shown in state records to be registered to a different model of car. The car fled the stop, driving at one of the officers as it did so, and the officers followed it for about 30 to 40 seconds at about 50 miles per hour. The pursued car fled at about 80 miles per hour and swerved between lanes until it struck the plaintiffs' vehicle when it was about six blocks ahead of the police vehicle. Assuming for the sake of summary judgment that the pursuit was ongoing at the time of the collision and that the officers did not activate their emergency light and siren, this court affirmed the summary judgment in favor of the City. *Id.* at 367. Though both presumed facts were contrary to City police policy, this court held that violating a self-imposed policy or guideline does not constitute negligence or willful and wanton conduct. *Id.* at 368.

¶ 30    In *Freeman*, this court considered whether the City was entitled to judgment as a matter of law on the argument that the evidence did not show proximate cause. *Freeman*, 2017 IL App (1st) 153644, ¶ 33. In holding to the contrary, we cited *Suwanski* and rejected the proposition that "even if Officer Kennedy had never followed the fleeing SUV the wrong way down the one-way street, Mr. Jones still would have crashed into Tommye Freeman's vehicle based solely on the fact that the police had signaled him to pull over only a few minutes before the crash." *Id.* ¶ 45. Such an

> "argument rests on speculation that if Officer Kennedy had not followed the SUV, Mr. Jones still would have continued driving the wrong way down 78th Street for almost a mile, would have driven at the same rate of speed, would have turned right onto State Street, and would have ignored the red light at 76th and State Streets. That is a lot to assume." *Id.*

In other words,

> "Officer Kennedy observed Mr. Jones driving the wrong way down a one-way street at speeds of up to 80 miles per hour in a 25-mile-per-hour speed limit zone, and saw Mr. Jones going through street intersections without stopping. Simply based on this information, Officer Kennedy reasonably could have foreseen that, if followed by a police vehicle, this person would continue to drive recklessly, speed, and drive through intersections without stopping or consideration of any traffic signals or signs." *Id.* ¶ 46.

We found that the City police pursuit policy also showed foreseeability, noting its reminder to be cognizant of the seriousness of pursuits and the risks they present. *Id.* ¶ 47.

¶ 31    In *Dayton v. Pledge*, 2019 IL App (3d) 170698, ¶ 30, the Third District of this court found that a county sheriff's department was not entitled to judgment as a matter of law upon an

argument that the evidence did not show willful and wanton conduct or proximate cause. This court considered the proposition that "as matter of law, an officer's violation of internal policy and speeding do not constitute willful and wanton conduct" but followed *Suwanski*. *Id.* ¶¶ 34-36. While the officer was pursuing a driver suspected of driving under the influence, used his emergency lights and siren, and slowed for intersections, he was also aware of prior collisions, the chase proceeded at over 100 miles per hour, and the county sheriff's department's pursuit policy justified high-speed pursuit only for suspected felonies involving an actual or threatened attack. *Id.* ¶ 37. This court also followed *Suwanski* on proximate causation: it is reasonably foreseeable that pursuing a vehicle at high speed "would result in injury to some bystander." *Id.* ¶ 44. This court considered the pursuit policy and the officer's awareness of it as additional evidence of foreseeablilty. *Id.* ¶ 45.

¶ 32                                    C. The Instant Case

¶ 33    Here, the basic facts from discovery are undisputed by the parties. The City officers sought to stop the vehicle owned by Smith and driven by Jones because it lacked a front license plate. Jones initially obeyed but then fled at high speed. The officers followed with their emergency lights and siren active, driving about 55 miles per hour while Jones drove about 70 to 80 miles per hour, on a two-lane residential street posted for no more than 30 miles per hour. Jones disregarded two stop signs in his flight until he disregarded a red light and his vehicle struck plaintiffs' vehicle. The pursuit covered about three blocks and lasted about 20 seconds.

¶ 34    It is also undisputed that the City had a policy governing pursuit by its police officers and that the City officers were aware of it. The policy provides in relevant part that officers "will not engage in a motor vehicle pursuit whenever the most serious offense for which the motor vehicle is wanted is a non-hazardous traffic offense." Chi. Police Dep't G.O. G03-03-01(III)(A) (eff.

June 1, 2003). The policy reminds members of the City police to "be cognizant of the fact that motor vehicle pursuits are a serious matter with a potential for death and/or injury to the involved members, persons in the vehicle being pursued, and other persons in the area." (Emphasis omitted.) Chi. Police Dep't G.O. G03-03-01(IV)(B) (eff. June 1, 2003).

¶ 35    However, the inferences that may be drawn from these facts are very much in dispute. Unlike *Hall* and *Shuttlesworth*, the City officers here pursued Smith's vehicle for merely driving without a front license plate. Similar to *Suwanski* and unlike *Hall*, the pursuit here was on a two-lane 30-mile-per-hour residential street in Chicago. As in *Suwanski*, Jones ran stop signs before the collision. Lastly, while a 20-second flight by Jones could be reasonably inferred to have been Jones's flight alone rather than the City officers' pursuit, it is also reasonable to infer that Jones was still fleeing when he struck the Winstons' vehicle because the City officers had been pursuing him. A jury should be allowed to weigh those competing reasonable inferences.

¶ 36    As to the police pursuit policy, this court has stated that violation of self-imposed rules or internal guidelines does not normally impose a legal duty, constitute evidence of negligence, or constitute willful and wanton conduct. *Shuttlesworth*, 377 Ill. App. 3d at 368. However, in *Freeman* and *Dayton*, this court considered police pursuit policies as evidence of foreseeability for proximate causation purposes and, in *Dayton*, also considered such policies as evidence to be considered in determining whether willful and wanton conduct has been shown. We consider the latter approach, in which police policy is a relevant piece of evidence but not *per se* willful and wanton conduct or *per se* proximate causation, to be the better one. In light of the discovery evidence and the inferences that can be drawn therefrom, as discussed above, we consider the City officers' clear violation of the City police pursuit policy to be another weight on the scale against summary judgment for the City defendants.

¶ 37    In sum, we find that summary judgment for the City defendants was inappropriate. Stated another way, we find that the trial court erred in finding that plaintiffs failed to show willful or wanton conduct or proximate causation on the part of the City defendants. In reaching that conclusion, we shall echo the language of our brethren in *Suwanski*:

> "we decide this case on the particular facts before us. We further offer no opinion as to whether the evidence here does in fact support a conclusion that this pursuit was the proximate cause of plaintiff's harm or that [the officers] acted willfully and wantonly. Those are matters entirely for a jury to decide." *Suwanski*, 342 Ill. App. 3d at 259.

¶ 38                                    IV. CONCLUSION

¶ 39    Accordingly, the summary judgment for the City defendants is reversed, and this cause is remanded to the circuit court for further proceedings consistent with that reversal.

¶ 40    Reversed and remanded.

# No. 1-18-1419

| | |
|---|---|
| **Cite as:** | *Winston v. City of Chicago*, 2019 IL App (1st) 181419 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-L-10981; the Hon Kathy M. Flanagan, Judge, presiding. |
| **Attorneys for Appellant:** | Daniel E. Goodman and Terry M. Lachcik, both of Rosemont, for appellant. |
| **Attorneys for Appellee:** | Mark A. Flessner, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Sara K. Hornstra, Assistant Corporation Counsel, of counsel), for appellees. |