2026 IL App (1st) 241320
Nos. 1-24-1320 & 1-24-1326 cons.
Opinion filed March 20, 2026

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

ANGJELL HINTON-GOODWIN and BRIAN
GOODWIN,

    Plaintiffs-Appellants,

v.

THE CITY OF HARVEY, ELIJAH
MUHAMMAD, EDUARDO SERRANO,
ANTUAN KELLY, HAL BISCHOFF, ADRIAN
ORTIZ and MARCUS PATTERSON,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Appeal from the Circuit Court
of Cook County.

Nos. 21 L 930,
    22 L 412 (cons.)

The Honorable
Michael F. Otto
Judge, presiding.

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Pucinski concurred in the judgment and opinion.
Justice Gamrath dissented, with opinion.

**OPINION**

¶ 1    Angjell Hinton-Goodwin sustained injuries when her car was struck by a vehicle fleeing

City of Harvey police. She sued, alleging that the officers acted willfully and wantonly and

caused her injuries. Her husband sought damages for loss of consortium. Defendants moved

for summary judgment. They argued that their conduct was not willful and wanton as required

for liability under section 2-202 of the Local Governmental and Governmental Employees Tort

Immunity Act (Tort Immunity Act) (745 ILCS 10/2-202 (West 2024)) and was not the proximate cause of the accident.

¶ 2    The trial court granted summary judgment, finding no genuine issues of material fact on willful and wanton or proximate cause. In the absence of an underlying claim, the court also entered summary judgment on the loss of consortium counts. We affirm.

¶ 3                                    BACKGROUND

¶ 4    On January 15, 2021, at about 11 p.m., Harvey police officer Elijah Muhammad was on routine patrol when he spotted a vehicle, a blue Chrysler 200, parked at a gas station that he believed matched a vehicle involved in an aggravated battery or shooting, which Muhammad had seen on video. Muhammad ran the license plate through the Law Enforcement Agencies Data System (LEADS), which indicated the vehicle had been reported stolen. When he approached, he noticed the driver was asleep with the engine running.

¶ 5    Muhammad requested backup. When Officer Eduardo Serrano responded, Muhammad used his knife to disable the vehicle by puncturing three of its tires. (Both Serrano and Muhammad had their body worn cameras activated.) Sergeant Marcus Patterson and Officer Hal Bischoff also responded. Muhammad told Patterson he believed the vehicle was stolen. Patterson noted that although the license plate came back to a stolen vehicle, it did not correspond to the vehicle. Muhammad tried to obtain the vehicle identification number (VIN) to verify through LEADS, but the VIN was obstructed. Officer Bischoff informed the officers he heard a dispatch call stating that a blue Chrysler 200 might be involved in an attempted vehicular hijacking at the gas station.

¶ 6    Muhammad repeatedly hit the driver's side window with a baton. Although the glass did not break, he woke the driver, Robert Birdette. Muhammad noticed Birdette was lethargic and

appeared intoxicated. After identifying himself as a Harvey police officer, Muhammad told Birdette to open the door. Birdette refused, put the car in gear, and sped off.

¶ 7    Muhammad, Patterson, Bischoff, and Serrano followed in their vehicles. Officers Adrian Ortiz and Antuan Kelly later joined them. Most of the officers activated their lights and sirens. Ortiz couldn't remember if he did; Muhammad said he used his lights but intermittently activated his siren.

¶ 8    Traffic was light, the weather was clear, and pedestrians were not present. Birdette disregarded a red light, drove through a store parking lot, and veered into incoming traffic. He lost one of his tires and was driving with only one working tire. His speed during the pursuit never exceeded 40 miles per hour. Officers drove ahead to warn oncoming traffic. They also contacted the South Holland Police Department to block traffic as the pursuit headed in that direction. The pursuit lasted about seven minutes and covered 4.5 miles.

¶ 9    At an intersection, Birdette ran a red light and collided with Hinton-Goodwin's car. Hinton-Goodwin suffered extensive injuries, including a broken arm, shattered ankle, broken leg, fractured pelvis and hip, broken ribs, and displaced vertebrae, requiring multiple surgeries. She has no recollection of the accident. Birdette died from his injuries.

¶ 10    Illinois State Police Master Sergeant Krista Kellam performed a traffic crash reconstruction and found that Hinton-Goodwin's vehicle struck the driver's side of Birdette's vehicle. She did not apply the brakes or try to avoid the collision by swerving or turning.

¶ 11    Hinton-Goodwin and her husband, Brian Goodwin, sued the City of Harvey and the individual police officers for willful and wanton conduct (count I), negligent retention and hiring (count II), negligent supervision, (count III), and loss of consortium (counts IV and V). They also brought claims against Birdette's estate but voluntarily dismissed them.

¶ 12       Defendants moved for summary judgment. The trial court granted the motion, finding the officers' conduct was not willful and wanton or the proximate cause of Hinton-Goodwin's injuries. The court also found Hinton-Goodwin failed to present evidence supporting her negligent hiring, retention, and training theories. Because the underlying claims failed as a matter of law, the court also granted summary judgment on the loss of consortium counts.

¶ 13                                              ANALYSIS

¶ 14       Hinton-Goodwin argues the trial court erred in (i) finding that defendants' conduct was not willful and wanton or the proximate cause of her injuries, and (ii) granting summary judgment on the loss of consortium claims. Hinton-Goodwin does not challenge the grant of summary judgment on her claims of negligent hiring and retention and negligent supervision, so those issues are waived. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 15                                         Standard of Review

¶ 16       Summary judgment applies where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2024). The court construes the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in the opponent's favor. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). Triable issues precluding summary judgment exist where material facts are disputed, or undisputed but reasonable persons might draw different inferences from them. *Id.* Courts grant summary judgment when the movant's right is clear and free from doubt. *Id.* Our review is *de novo*. *Bitsky v. City of Chicago*, 2023 IL App (1st) 220266, ¶ 32.

¶ 17                                    Willful and Wanton Conduct

¶ 18         Section 2-202 of the Tort Immunity Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2024). "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." *Id.* § 2-109. "Willful and wanton conduct" is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Id.* § 1-210.

¶ 19         Whether a police officer's actions amount to willful and wanton conduct is typically a question reserved for the trier of fact. *Shuttlesworth v. City of Chicago*, 377 Ill. App. 3d 360, 366 (2007). But it may be resolved on a motion for summary judgment "when all the evidence viewed in the light most favorable to the nonmovant so overwhelmingly favors the movant that no contrary determination based on that evidence could ever stand." *Id.*

¶ 20         Hinton-Goodwin contends the Harvey officers' pursuit of Birdette's vehicle was willful and wanton conduct because (i) Muhammad had disabled the vehicle, making it more dangerous to the public; (ii) Muhammad failed to follow Harvey police department policy by keeping his siren activated throughout the pursuit; and (iii) the officers pursued Birdette for having the wrong license plate, a minor traffic violation. She also argues the trial court erred in finding that the officers did not proximately cause her injuries.

¶ 21         Initiating a pursuit in an attempt to apprehend a fleeing offender even for minor traffic violations does not constitute willful and wanton conduct. See *Laco v. City of Chicago*, 154 Ill. App. 3d 498, 506 (1987) (pursuing vehicle driving wrong way down one-way street was

not willful and wanton conduct). Contrary to Hinton-Goodwin's contention that Birdette's vehicle only had the wrong license plate, the officers believed it may have been stolen and involved in a shooting or an aggravated battery, not a minor traffic violation.

¶ 22     Further, failing to activate emergency equipment, such as a siren, does not constitute willful and wanton conduct.

"Violation of self-imposed rules or internal guidelines *** 'does not normally impose a legal duty, let alone constitute evidence of negligence, or beyond that, willful and wanton conduct.' [Citation.] *** [A] police officer cannot be found to have acted willfully and wantonly when he pursues a vehicle driven recklessly as long as the officer does not pursue the vehicle in a reckless fashion." *Wade v. City of Chicago*, 364 Ill. App. 3d 773, 781-82 (2006).

¶ 23     This record does not present a genuine issue of material fact as to whether the officers pursued Birdette in a reckless fashion. The weather was clear; the roads were dry. At 11 p.m., traffic was light. And the critical events were captured on video. Nevertheless, Hinton-Goodwin and the dissent suggest Muhammad made the vehicle more dangerous by deflating three of its tires. They cite no authority holding that puncturing tires to stop or slow down potential flight constitutes willful and wanton conduct and no evidence that doing so caused the crash. The dissent notes that Birdette was driving on rims and missing one tire, which could "reasonably contribute" to his losing control of the vehicle, making it more dangerous. *Infra* ¶ 46. But nothing in the record suggests Birdette lost control or that the punctured tires, as opposed to his running a red light, led to the accident.

¶ 24     Hinton-Goodwin and the dissent urge us to follow *Suwanski v. Village of Lombard*, 342 Ill. App. 3d 248 (2003), and *Winston v. City of Chicago*, 2019 IL App (1st) 181419, and

remand. The facts of both cases differ markedly from this case, including in terms of nature and magnitude of police conduct.

¶ 25    In *Suwanski*, an officer attempted to stop a vehicle traveling below the speed limit with a partially obstructed windshield. *Suwanski*, 342 Ill. App. 3d at 250. The vehicle drove through a stop sign and weaved. *Id.* The pursuit lasted over eight minutes, covered 6½ miles, and reached speeds of 100 miles per hour. *Id.* at 257. The police continued the pursuit after the fleeing vehicle collided with a vehicle. *Id.* at 251. Ultimately, it crashed again, killing the drivers of both vehicles. The trial court granted summary judgment to the defendants. This court reversed, holding that under the unique circumstances of that case, a question of fact existed whether the officer engaged in willful and wanton conduct. *Id.* at 258. The court "recognize[d] that several decisions of the Illinois Appellate Court have affirmed summary judgment in favor of the police in police pursuit cases involving injuries to innocent third parties" and took "no issue with those cases, but merely [found] the unique facts of this case to be distinguishable from those prior cases." *Id.*

¶ 26    In *Winston*, officers pursued a vehicle with a missing front license plate. The chase reached speeds of 70 to 80 miles per hour down a two-lane residential street with a 30-miles-per-hour speed limit. 2019 IL App (1st) 181419, ¶ 33. The suspect ran two stop signs and a red light before crashing into and injuring the plaintiff. *Id.*

¶ 27    As noted, Birdette was not traveling at a high rate of speed and never exceeded 40 miles per hour. Although he drove into an oncoming traffic, no vehicles were present. Further, unlike in *Winston*, the pursuit was not initiated by a missing license plate, but due to the plates not matching the vehicle, leading the officers to believe it might be stolen. More telling, they believed the vehicle might have been involved in a shooting or attempted carjacking.

¶ 28　　　Furthermore, the dissent assumes that because the driver's identify was unknown and bodycam video shows him asleep before he drove away, he could not have posed an immediate threat to the officers or others. *Infra* ¶ 42. Not so. This ignores the officers' belief that the running vehicle may have been involved in a shooting or carjacking, an imminent threat even if the driver appeared asleep as they approached. When Birdette woke up, Muhammad identified himself and ordered him to open the car door. Birdette ignored the instructions and immediately hit the car's accelerator, which would reasonably lead the officers to view him as a threat.

¶ 29　　　The dissent suggests that the officers could have chosen a different course of action, such as boxing in Birdette's car. But neither hindsight alternatives nor the resulting accident, which we agree with the dissent was catastrophic, render the officers' conduct in the moment willful and wanton. See *Bowden v. Cary Fire Protection District*, 304 Ill. App. 3d 274, 281 (1999) (we evaluate willful and wanton "in light of the circumstances in which they found themselves and not under the unassailable illumination of hindsight" (internal quotation marks omitted)). Thus, the willful and wanton inquiry is objective, focusing on the officers' conduct at the time, not on possibilities conceived after the fact.

¶ 30　　　The dissent concludes by invoking the "unique" circumstances here *Infra* ¶ 47. Not only are the facts far removed from those in *Suwanski*, they are wholly consistent with common police practice, as the many cases granting summary judgment demonstrate. What rendered the circumstances in *Suwanski* "unique" was not the severity of the outcome, but the extraordinary nature of the police conduct.

¶ 31　　　No extreme conduct appears in this record. Our courts have ruled in favor of officers in pursuit cases involving far greater risk. See, *e.g.*, *Hall v. Village of Bartonville Police*

*Department*, 298 Ill. App. 3d 569 (1998) (high-speed driving under the influence pursuit); *Urban v. Village of Lincolnshire*, 272 Ill. App. 3d 1087 (1995) (high-speed pursuit of motorcycle driving erratically even though passenger was not wearing helmet); *Nelson v. Thomas*, 282 Ill. App. 3d 818 (1996) (pursuit at 75 miles per hour on wet roads near busy intersection); *Breck v. Cortez*, 141 Ill. App. 3d 351 (1986) (speeds from 45 to 60 miles per hour, after vehicle committed illegal U-turn).

¶ 32 The dissent suggests cases affirming summary judgment are distinguishable because the officers acted "knowing" the accident would happen, citing Muhammad's comment during the chase that Birdette was "going to crash." *Infra* ¶¶ 44, 46. Foreseeing that a fleeing suspect might crash is not the same as consciously disregarding safety. And, as mentioned, this court held in *Wade* that "a police officer cannot be found to have acted willfully and wantonly when he [or she] pursues a vehicle driven recklessly as long as the officer does not pursue the vehicle in a reckless fashion." *Wade*, 364 Ill. App. 3d at 781-82.

¶ 33 To reiterate, traffic was minimal and the roads were dry. Officers not only drove ahead to warn oncoming traffic but asked a neighboring police department to block traffic. They took steps to avoid the accident; that it occurred nevertheless does not support a finding of willful and wanton conduct.

¶ 34 In addition, adopting the dissent's view would effectively eliminate summary judgment in pursuit cases, contrary to the purpose of the Tort Immunity Act and settled Illinois authority. The statute sets a high bar to prevent second-guessing of split-second police decisions.

¶ 35 On this record, no reasonable jury could find the officers' conduct willful and wanton. So, we affirm the order granting summary judgment. Because we find defendants' conduct was not willful and wanton, we need not address Hinton-Goodwin's proximate cause arguments.

¶ 36                                     Loss of Consortium

¶ 37          Summary judgment on the consortium claim brought by Hinton-Goodwin's husband was

proper as well. "While loss of consortium is a separate cause of action from the impaired

spouse's claim, it derives from that claim. [Citation.] When the impaired spouse's claim fails

as a matter of law, the deprived spouse's claim for loss of consortium must also fail." *Ramirez*

*v. City of Chicago*, 2019 IL App (1st) 180841, ¶ 20. Because Hinton-Goodwin's claim fails as

a matter of law, her husband's loss of consortium claims also fail.

¶ 38          Affirmed.

¶ 39          JUSTICE GAMRATH, dissenting:

¶ 40          I respectfully dissent. The majority affirms summary judgment on the ground that no

reasonable jury could find defendants' conduct willful and wanton. This conclusion substitutes

judicial judgment for that of a jury on a question that is typically a question of fact and where

reasonable minds may differ.

¶ 41          Under Illinois law, willful and wanton conduct "means a course of action which shows an

actual or deliberate intention to cause harm or which, if not intentional, shows an utter

indifference to or conscious disregard for the safety of others or their property." 745 ILCS

10/1-210 (West 2024). Only in the clearest of cases may the issue be resolved as a matter of

law. See *Suwanski v. Village of Lombard*, 342 Ill. App. 3d 248, 257 (2003). This is not such a

case, as demonstrated by the bodycam video footage.

¶ 42          The video shows a man unconscious in a parked car at a gas station. He is unresponsive for

five minutes. Police officers used a baton to bang repeatedly on the driver's side window,

smashing the glass to wake him up. Although officers suspected the car may have been

involved in a crime, they did not know who was inside. Until he awoke, the driver posed no immediate threat to the officers or the public, as the video plainly shows.

¶ 43    While the man remained unconscious, an officer slashed three of the car's tires and called for backup. Additional officers arrived, circled the car multiple times, shined flashlights inside, and positioned their police vehicles behind one another. Still, the man did not move. The police made no attempt to block the car's exit. Instead, they created a safety hazard for the driver and the public by damaging the car, waking the driver who appeared intoxicated, and allowing him to flee in a car rendered unsafe by their own actions.

¶ 44    When the driver fled, several police vehicles chased after him, running red lights and escalating the situation. During the chase, an officer predicted twice that the car would crash and noted that its rear tire had detached and fallen into the roadway. The driver was traveling at approximately 40 miles per hour in a 30-miles-per-hour zone with only three tires, two of which were flat, and with other traffic present. None of the cases the majority cite involve the police purposely damaging a vehicle, making it unsafe to drive on the road, engaging in chase, and continuing to pursue an unsafe vehicle knowing it would crash. These facts distinguish this case from those in which summary judgment has been upheld.

¶ 45    Summary judgment is a drastic measure. *Id.* at 254. Where competing inferences may be drawn from the facts, summary judgment is improper. See *id.* at 255; *Winston v. City of Chicago*, 2019 IL App (1st) 181419, ¶ 35. Here, a reasonable jury could infer that by slashing the tires, breaking the driver's side window, and waking the driver from a stupor, officers showed an utter indifference to or conscious disregard for the safety of the driver and others.

¶ 46    Driving on three flat tires and with a shattered window is itself a citable offense. In this case it caused debris, including a tire, to scatter across the roadway. Operating on rims and

losing a tire could reasonably contribute to loss of control, increased stopping difficulty, and heightened danger at intersections, particularly where the driver appeared to be intoxicated. An officer in the video is heard saying twice the car was going to crash. Despite anticipating a collision, the multi-vehicle pursuit continued for 4.5 miles and seven minutes, disregarding the risk.

¶ 47     Even if defendants did not intend to cause harm, a jury could find their actions and judgment was so deficient as to constitute willful and wanton conduct or conscious disregard for the safety of others. The consequences were catastrophic, resulting in a car fire, a dramatic explosion, one person dead, and another severely injured. While courts routinely and properly grant summary judgment in police pursuit cases where the facts permit only one reasonable inference, the circumstances here are unique, and the question of willful and wanton conduct belongs to a jury. Because I would reverse the grant of summary judgment, I dissent.

***Hinton-Goodwin v. City of Harvey*, 2026 IL App (1st) 241320**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 21-L-930, 22-L-412; the Hon. Michael F. Otto, Judge, presiding. |
| **Attorneys for Appellant:** | Shawn Barnett, of Hale & Monico, LLC, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Kathleen M. Kunkle, of Ancel Glink, P.C., of Chicago, for appellees. |