Avery Miller, Appellee, v. W. T. Vancil et al., Co-Partnership, Trading as Vancil Funeral Home, Appellants.

Gen. No. 9,664.

Opinion filed October 31, 1949. Released for publication November 28, 1949.

GILLESPIE, BURKE & GILLESPIE, of Springfield, for appellants; LOUIS F. GILLESPIE and FREDERICK H. STONE, both of Springfield, of counsel.

G. WILLIAM HORSLEY, HARVEY BEAM and ALLEN R. TOMLINSON, all of Springfield, for appellee.

MR. PRESIDING JUSTICE WHEAT delivered the opinion of the court.

Plaintiff appellee, Avery Miller, obtained a judgment based upon a jury verdict, against defendants appellants W. T. Vancil and others, doing business as Vancil's Funeral Home, in the sum of $2,500 for damages arising out of a collision between plaintiff's automobile and defendants' automobile ambulance. Motion for judgment notwithstanding, the verdict was denied and this appeal follows.

The complaint charges that on June 14, 1947, at about 4:20 p. m., plaintiff was driving his car northerly on Peoria Road near the intersection of Sangamon avenue in the City of Springfield; that defendants, through their agent, were driving an ambulance in a westerly direction on Sangamon avenue and drove the same into the automobile of plaintiff; that plaintiff was in the exercise of due care;. that defendants were negligent as to speed, failing to yield right of way to plaintiff, who was on U. S. Route 66, a through street protected by stop signs; failing to give warning, to keep a proper lookout and to have the ambulance under control. Defendants filed an answer consisting of a general demand, and also plead a counterclaim against plaintiff for damages to the ambulance.

The court denied defendants' motion for a directed verdict at the close of all the evidence and the case was submitted to the jury who returned a verdict in favor of plaintiff in the sum of $2,500 as to his com-

2

plaint and a verdict in his favor on defendants' counterclaim. The jury answered in the affirmative the four following special interrogatories: (1) Did the plaintiff drive his car into the intersection when his view of vehicles approaching from the right was obstructed; (2) Did the driver of the ambulance give an audible signal; (3) Did plaintiff yield the right of way to the ambulance; (4) Was the plaintiff in the exercise of due care.

The only question presented is as to whether or not the plaintiff was in the exercise of ordinary care at and just prior to the time of the accident. Defendants contend that there is no evidence showing due care and that the evidence affirmatively shows that plaintiff was guilty of contributory negligence which proximately caused his injuries. In this connection two sections of the Motor Vehicle Act are cited. Paragraph 120, sec. 23, ch. 95½, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 85.152], provides as follows: "(b) The driver of any authorized emergency vehicle when responding to an emergency call upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety but may proceed cautiously past such red or stop sign or signal." Paragraph 169, sec. 72 of such chapter [Jones Ill. Stats. Ann. 85.201], provides as follows: "(a) Upon the immediate approach of an authorized emergency vehicle, when the driver is giving audible signal by siren, exhaust whistle, or bell, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right hand edge or curb of the highway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer. (c) This section shall not operate to relieve the driver of an authorized emer-

3

gency vehicle from the duty to drive with due regard for the safety of all persons using the highway.''

As stated in the brief of the defendants it is conceded that inasmuch as there was testimony concerning the speed of the second ambulance and its failure to stop at the stop sign, the question was fairly one for the jury as to the negligence of defendants' driver. As to the conduct of the plaintiff, it appears from the evidence that he was a man sixty-four years of age and was driving a Model A Ford coupe at the time of the accident. As he drove north on Peoria Road approaching the intersection with Sangamon avenue, he heard a siren or sirens and stopped his car along the east side of the pavement next to some parked cars and several car lengths to the south of the intersection at a point where he had no view to the east. As soon as the first ambulance had turned south at the intersection and had passed him with its siren still sounding, he started his car and as he approached the intersection another north bound car passed him, cut across the front of him and proceeded to the east on Sangamon avenue. He then continued north in the intersection and was moving between twelve and fifteen miles an hour when he was struck by the second ambulance at a point in the intersection slightly north of the center of Sangamon avenue and on the east side of Peoria Road. The second ambulance had been proceeding westerly at a distance estimated by various witnesses to be a half block, a block or a half mile behind the first ambulance. The second ambulance, as it passed the stop sign, was traveling at a speed estimated by various witnesses to be between forty and fifty miles an hour; one witness testified that it was traveling about sixty miles an hour about four hundred feet east of the intersection and by application of the brakes had reduced its speed to about thirty miles an hour at the time of the collision. The

4

driver of the first ambulance testified that the other ambulance was following him at a distance of approximately one block; the driver of the second ambulance stated that he was driving at a speed of about fifty miles an hour as he passed through the subway about four hundred feet east of the intersection and at the time of the collision was traveling about twenty-five miles an hour. The siren of the second ambulance was in continuous operation. He stated that he was between a half block and a block behind the first ambulance. He also stated that as he approached the intersection he saw plaintiff's Ford coupe enter the intersection going very slowly. A witness, Margaret Huffman, testified that she was driving north on Peoria Road and about to enter the intersection when she heard the noise of a siren or sirens and then turned east on Sangamon avenue but did not know that there were two ambulances until she had turned the corner. The first one was then close to the intersection and the second was coming under the viaduct which had been located as being about four hundred feet east of the intersection.

■ From an examination of all the evidence in the case concerning the conduct of plaintiff at and prior to the collision and viewing it in the light of the situation then existing, it cannot be said that the question of due care was not a matter for the jury to pass upon. The jury found that the plaintiff was in the exercise of due care, not only by its general verdict as to the complaint, but by its general verdict of not guilty on the defendants' cross complaint and also by answering a special interrogatory on the subject. It is apparent that a most unusual situation existed in that two ambulances were involved and it was for the jury to say whether the plaintiff acted as a reasonable person should have, proceeding across the intersection after the first ambulance had passed

5

with its siren still sounding so as to cause plaintiff to fail to distinguish between the sound of the siren of the first ambulance and that of the second ambulance. The cases cited by defendants in general relate to ordinary situations and not to the unusual one prevailing at the time of the collision in this case. The case of *Schluraff v. Shore Line Motor Coach Co.*, 269 Ill. App. 569, is cited as being in point. In that case, three busses were following a police officer on a motorcycle with his siren sounding through the intersection at Jackson and Michigan Boulevards in Chicago, against a red light. Other drivers, after having heard the siren, were waiting at the intersection for the busses to pass and a yellow cab proceeded into the intersection and collided with the second bus. The plaintiff in that case was a passenger in the cab and the court held that as to such plaintiff the cab driver was at fault. This case is not analogous to the present one, as to the factual situation, and offers no assistance in arriving at a proper legal conclusion.

■■ In passing upon a motion for a directed verdict or a motion for judgment notwithstanding the verdict, the question of due care or contributory negligence becomes a question of law only when it properly can be said that under the facts stated with all reasonable inferences which may be drawn from the same, that all reasonable minds would reach the same conclusion, to wit, that the plaintiff as a matter of law failed to exercise due care or was guilty of contributory negligence. In the case of *Thomas v. Buchanan*, 357 Ill. 270, the court said: ''The question of due care on the part of the plaintiff's intestate is always a question of fact to be submitted to a jury whenever there is any evidence in the record which, with any legitimate inference that may reasonably and legally be drawn therefrom, tends to show the exercise of due care on the part of the deceased.''

In the instant case, the matter of due care and contributory negligence was properly a matter for the jury to pass upon in view of the exceptional circumstances surrounding the occurrence. The judgment of the circuit court is affirmed.

*Affirmed.*