PETER LACO *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 86—0563

Opinion filed March 20, 1987.

500

Richard J. Belmonte, of Chicago, for appellants.

Judson H. Miner, Acting Corporation Counsel, of Chicago (Ramsay Laing Klaff and Maureen Jeannette Kelly, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiffs, Peter Laco, Augustina Laco, Ivanna Lamb, and Bernice Mahnke, individually and as special administrator of the estate of Dean Mahnke, deceased, appeal from an order of the circuit court of Cook County granting summary judgment to defendant city of Chicago and its police officers, John Walsh and John Karlow, in a negligence and wrongful death action. Plaintiffs contend: (1) that defendants failed to satisfy the procedural or substantive require-

ments for summary judgment; (2) that "Illinois law allows recovery for persons injured by a fleeing violator who is being pursued by the police"; and (3) that "a jury [could] find that the defendants were liable to the plaintiffs from the documents contained in the record." For the reasons set forth below, we affirm.

The record discloses that on November 1, 1979, a collision occurred at 27th Street and Princeton Avenue in Chicago between plaintiffs' automobile and a stolen vehicle being driven by Henry Hernandez. Hernandez, who was being pursued for traffic violations by defendant police officers Walsh and Karlow, struck plaintiffs' car and, as a result, plaintiffs were injured and Dean Mahnke was killed. On September 26, 1980, plaintiffs filed a complaint alleging Walsh and Karlow negligently and recklessly operated their vehicle at high and dangerous speeds knowing that such action would result in injury to other drivers; that they failed to use oscillating or flashing lights or sound a siren during the chase; that they failed to take appropriate steps to warn other drivers of the approach of the vehicles operated by them and Hernandez; and that they operated their vehicle so that, as a direct and proximate cause, plaintiffs were injured.

Defendants subsequently filed a motion for summary judgment, attaching the depositions of officers Walsh and Karlow and police reports. Plaintiffs filed a motion to strike defendants' motion, but did not file any counteraffidavits or other evidence contradicting defendants' evidence.

Walsh's and Karlow's depositions, as well as the police reports, indicated that at approximately 11 p.m. on November 1, 1979, Walsh was driving a marked squad car when he and Karlow observed a 1971 Chevrolet heading north on Wentworth Avenue, a southbound, one-way street. The Chevrolet traveled approximately 50 feet on Wentworth, made a U-turn, drove into a gas station, and then proceeded west on 31st Street, a two-way street. The officers had followed the Chevrolet for two short blocks when it turned onto 31st Street. At that time Karlow activated the squad car's blue Mars lights and siren. When the Chevrolet turned north on Princeton, another two-way street, Walsh put on the squad car's floodlight and directed it towards the Chevrolet. On Princeton, the officers encountered cars double-parked on both sides of the street and slowed the speed of their car to two to three miles per hour. After passing through the double-parked cars, they saw the Chevrolet 1 1/2 blocks ahead of them traveling at an approximate speed of 60 miles per hour.

As the squad car traveled up Princeton, the officers saw no other vehicles on the street. At 28th Street, an east-west street, the Chevrolet ran a stop sign, as well as at 27th Street, where it collided with plaintiffs' vehicle which was traveling in a westerly direction on 27th Street. Karlow testified that during the chase he and Walsh proceeded at varying speeds: 30 to 35 miles per hour, 15 miles per hour, 2 to 3 miles per hour. Walsh testified that the maximum speed of the squad car may have been between 40 and 45 miles per hour. The chase covered a distance of approximately six city blocks; the evening was clear; the streets were dry and artificially illuminated; and traffic was not heavy.

In granting defendants' motion for summary judgment, the trial court ruled that defendants owed no duty to plaintiffs and that, if there was a duty, no liability arose because the acts of the defendants as a matter of law did not constitute wilful and wanton conduct.

■■ ■ On appeal, we first address plaintiffs' argument that defendants failed to satisfy procedural or substantive requirements for summary judgment. Summary judgment should be granted where " 'the pleadings, depositions and admissions on file, together with the supporting affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " (*Wright v. Adonis Compania Naviera, S.A.* (1978), 59 Ill. App. 3d 108, 110, 376 N.E.2d 4; Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) Evidence is to be construed strictly against the moving party and liberally in favor of the opponent. (*Clausen v. Ed Fanning Chevrolet, Inc.* (1972), 8 Ill. App. 3d 1053, 291 N.E.2d 202.) The right to summary judgment must be clear beyond question and an order granting summary judgment must be reversed if a reviewing court determines that a material question of fact does exist. *Wright v. Adonis Compania Naviera, S.A.* (1978), 59 Ill. App. 3d 108, 376 N.E.2d 4.

■ In an action for wilful and wanton negligence, the plaintiff must establish the existence of a duty, breach of that duty, and an injury proximately resulting from that breach. (*Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 490 N.E.2d 88.) The existence of a duty, *i.e.*, whether a defendant and plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation to meet a standard of conduct for the benefit of the plaintiff, is a question of law properly addressed by the court on a motion for summary judgment. *Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428, 495 N.E.2d 1259; *Breck v. Cortez* (1986), 141

Ill. App. 3d 351, 490 N.E.2d 88.

We further observe that "although a complaint *** may purport to raise issues of material fact, if such issues are not further supported by evidential facts through affidavits or other evidence, summary judgment is appropriate; if the party moving for summary judgment supplies facts which, if not contradicted, would entitle such a party to judgment as a matter of law, the opposing party cannot rely on his or her complaint *** alone to raise genuine issues of material fact." *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 818-19, 416 N.E.2d 328.

■ In the instant case, defendants alleged in their motion for summary judgment that they owed no duty to plaintiffs pursuant to sections 2—109 and 2—202 of the Local Governmental and Governmental Employees Tort Immunity Act (Governmental Tort Immunity Act) (Ill. Rev. Stat. 1983, ch. 85, pars. 2—109, 2—202), which provide, respectively:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."

"A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes wilful and wanton negligence."[1]

Under section 2—202, immunity is extended to the negligent acts or omissions to act by public employees while in the exercise of enforcing the law. (*Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 474 N.E.2d 13.) In the instant case, therefore, plaintiffs were required to present evidence in support of their charge of wilful and wanton negligence by defendants. Plaintiffs failed to do so; they did not file any counteraffidavits or other evidence rebutting defendants' evidence as set forth above in this opinion. The trial court therefore could reach no other conclusion but that no genuine issue of material fact existed, that defendants owed no duty to plaintiffs and, in light of the evidence, that defendants were not guilty of wilful and wanton negligence.

We further observe that, in light of plaintiffs' appellate brief, we find ourselves in the same position as the trial court. Plaintiffs' argument on this issue fails to contradict or point to any specific inad-

---

[1]Section 2—202 was amended, effective November 25, 1986, by Public Act 84—1431, art. 1, sec. 2, changing wilful and wanton *negligence* to wilful and wanton *conduct*. No issue is raised with respect to the amended language, and the terms are used interchangeably here.

equacies in defendants' pleadings below. Instead, like their motion to strike in the trial court, plaintiffs' appellate brief merely recites general standards applicable in determining whether entry of a summary judgment is appropriate; there is no argumentative discussion. In addition, plaintiffs' third argument on appeal (*i.e.*, that "a jury can find the defendants were liable to the plaintiffs from the documents contained in the record") consists merely of a repetition of the allegations contained in their complaint, which cannot be relied upon to raise a genuine issue of material fact without the support of counteraffidavits or other evidence. In other words, with the exception of plaintiffs' charge that defendants were guilty of wilful and wanton conduct, which defendants denied, plaintiffs' complaint only consists of allegations of undisputed facts relevant to the occurrence of the collision.

Accordingly, we find that defendants did not fail to "satisfy the procedural and substantive requirements for summary judgment"; their motion was properly supported by the sworn depositions of Walsh and Karlow and by police reports of the accident, which plaintiffs failed to rebut by counteraffidavits or other evidence.

■ We also reject plaintiffs' further contention that the question of wilful and wanton conduct was a question of fact for the jury and, pursuant to their complaint, reasonable persons could draw different conclusions from the undisputed evidence. Although the question of whether conduct amounts to wilful and wanton negligence is normally a question of fact for the trier of fact, a court may make a determination of that issue if the evidence meets the standard enunciated in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, *i.e.*, where all of the evidence, when viewed in its aspect most favorable to the opponent, overwhelmingly favors the movant and no contrary determination based on the evidence could ever stand. (*Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 490 N.E.2d 88.) To constitute wilful and wanton conduct, a defendant's acts or omissions must have been committed with an actual or deliberate intention to cause harm or with an utter indifference to or conscious disregard for the safety of others. Ill. Rev. Stat., 1986 Supp., ch. 85, par. 1—210; see also *Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 490 N.E.2d 88.

■ In viewing the evidence in its aspect most favorable to plaintiffs here, we do not believe it could support a finding that the defendant officers were guilty of wilful and wanton conduct. The record establishes that although the car chase occurred in a residential area, traffic was light and defendants, in fact, did not encounter

other drivers during the chase, the streets were dry and artificially illuminated, and the evening was clear. The chase only covered a distance of approximately six city blocks. After initially spotting the fleeing violator driving down a one-way street the wrong way and observing him make a U-turn onto 31st Street, defendants turned on their blue Mars light and the car's siren. The officers' car speed varied during the chase from 15 miles per hour to 40 or 45 miles per hour and, at one point, decreased to 2 to 3 miles per hour in order to maneuver through double-parked cars. Moreover, although the fleeing traffic violator increased his speed after passing the double-parked cars to 60 miles per hour, the defendants did not. We believe these facts indicate a regard for the safety of others, rather than an utter indifference or conscious disregard of their safety; the defendants' car speed apparently was changed to adapt to the changing circumstances as they were encountered.

■■ ■ Plaintiffs also assert that defendants' decision to pursue Hernandez, after observing him commit a "minor" traffic violation, constituted wilful and wanton conduct. In support thereof, they contend that published policies of the Chicago police department regarding high speed chases of traffic law violators mandate that such chases be aborted where a minor traffic violation has been committed. For example, a general order and a training bulletin of the police department state:

> "Officers will terminate the pursuit when they feel that the risks outweigh the desirability of apprehension.
>
> * * *
>
> A discreet officer will not take undue risks to overtake a motorist whose only violation is a defective muffler or some similar nonhazardous violation. Violators who commit hazardous moving violations such as running a stop sign, failing to yield the right-of-way, etc. should be stopped, if possible, but it is unwise to take undue chances in apprehending them."

We believe these documents do little more than to emphasize the need for caution during the pursuit of a suspected offender. (See *Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 490 N.E.2d 88.) We further note that although the chase here occurred in a residential area, there was no traffic congestion at the time. Moreover, we do not believe driving down a one-way street the wrong way constitutes a "minor" traffic violation; instead, such an action, notwithstanding the speed of the traffic offender, creates as much of a potential hazard to an unfortunate driver proceeding legally on the same one-way street as the potential hazard to a driver who is le-

gally driving on a two-way street and who is confronted by a fleeing violator. In addition, once Hernandez sped away from the gas station, his "minor" traffic violations rose to the level of an even more serious danger to other drivers on the roadway.

■ We also find no merit in plaintiffs' further assertion that defendants here should have known that their pursuit of Hernandez might result in an automobile accident and that they therefore should have discontinued their pursuit of him. To so hold would result in a situation where an operator of an automobile who is speeding, or who is a reckless driver on the highway, would know that all he had to do was to go faster and there would be no chase. (See *Wrubel v. State of New York* (1958), 11 Misc. 2d 878, 174 N.Y.S.2d 687.) We further note that while it is extremely unfortunate that third parties are sometimes innocently involved and injured or, as in this case, killed by a fleeing traffic violator, such emotional and understandable human considerations are not a substitute for proof of negligence (see *Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 490 N.E.2d 88; *Stanton v. State of New York* (1970), 26 N.Y.2d 990, 311 N.Y.S.2d 28, 259 N.E.2d 494) or wilful and wanton conduct.

■ Plaintiffs' final argument is that "Illinois law allows recovery for persons injured by a fleeing violator who is being pursued by the police." We agree with plaintiffs that recovery is available in appropriate cases, *i.e.*, where police officers are guilty of wilful and wanton conduct pursuant to section 2—202 of the Governmental Tort Immunity Act (Ill. Rev. Stat., 1986 Supp., ch. 85, par. 2—202) or reckless disregard for the safety of others pursuant to section 11—205 of the Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—205). We disagree with plaintiffs, however, that under the facts in this case they are entitled to recovery in light of our discussion above.

We also note that the cases relied upon by plaintiffs in support of their "fleeing violator" argument are distinguishable from the instant case. Briefly, those cases are as follows: *Clark v. City of Chicago* (1980), 88 Ill. App. 3d 760, 410 N.E.2d 1025 (immunity for *negligence* pursuant to Governmental Tort Immunity Act was inapplicable where city involved in inherently dangerous building demolition activities); *Mason v. Village of Bellwood* (1976), 37 Ill. App. 3d 543, 346 N.E.2d 175 (fire truck collided with plaintiff's automobile; liability based on fire truck's *negligent* entrance into a controlled intersection on a red light without slowing or ascertaining if the intersection was clear, notwithstanding whether or not siren had

been sounded); *Kirshenbaum v. City of Chicago* (1976), 43 Ill. App. 3d 529, 357 N.E.2d 571 (police car collided with victim's vehicle; liability based on *wilful and wanton conduct* of police officers in failing to warn of approach by use of lights, siren and/or verbal communication to the plaintiff of the imminent danger); *Sundin v. Hughes* (1969), 107 Ill. App. 2d 195, 246 N.E.2d 100 (fleeing traffic violator's vehicle struck pedestrian 1, who struck pedestrian 2 with his body; liability premised upon the *negligent* failure of police officers to use a siren to warn pedestrians of approach of their vehicle and the fleeing suspect's vehicle); *Moore v. Cook* (1959), 22 Ill. App. 2d 48, 159 N.E.2d 496 (police car collided with the plaintiff's vehicle; liability based on *negligence* of police officer in passing a vehicle at 90 miles per hour while in pursuit of traffic offender); *Miller v. Vancil* (1949), 339 Ill. App. 1, 88 N.E.2d 678 (case involved question of *negligence* in a collision between commercially owned ambulance and the plaintiff's vehicle); *Knittle v. Heyden* (1949), 337 Ill. App. 104, 85 N.E.2d 207 (defendant police officer liable for *negligence* where he was on a personal mission, rather than performing a governmental function as a police officer, at the time his car collided with the plaintiff's).

All but one of the above cases involved actions for negligence. Here, however, plaintiffs conceded at the outset of oral argument in this court that they could only recover on a wilful and wanton conduct theory under the Governmental Tort Immunity Act[2] and, accordingly, recovery based on a negligence theory was not in issue in this appeal. Plaintiffs' continued reliance on these negligence cases is therefore misplaced. Moreover, the one case which was based on wilful and wanton conduct is factually distinguishable; liability of the police officers in that case was based on their failure to sound a warning siren while pursuing a vehicle.

On the other hand, we find the case of *Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 490 N.E.2d 88, which defendants rely on, analogous to the instant case. In *Breck*, the plaintiff parents brought an action against police officers for the wrongful death of their son who was killed when a fleeing suspect's automobile collided with his car. The suspect was first observed driving his car in the dark without any headlights on at 9 p.m. The suspect made a U-turn, causing

---

[2]As previously mentioned, the immunity in section 2—202 of the Governmental Tort Immunity Act extends to *negligent* acts or omissions done while in the actual execution or enforcement of a law (*Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 474 N.E.2d 13) and, therefore, a plaintiff must prove a defendant's conduct was wilful and wanton in order to recover.

his car to spin around 360 degrees which forced another car off the road. The police pursued the suspect for five miles, reaching speeds of 60 to 65 miles per hour. The chase was at night, traffic was light to medium, the area was nonresidential and nonindustrial, misty weather conditions existed, and the streets were wet. After a review of all the evidence, the court granted summary judgment to the defendants.

■ Here, unlike *Breck*, the distance and corresponding length of time of the chase was much shorter; evidence was presented indicating that defendants drove at varying speeds to adapt to the circumstances as they developed, never reaching beyond 45 miles per hour; the streets were dry and artificially illuminated; the night was clear; and the officers encountered no other traffic in the area. The propriety of summary judgment in favor of defendants therefore is even more compelling in the instant case than it was in *Breck*.

■ Finally, during oral argument defendants urged that this court apply section 4—102 of the Governmental Tort Immunity Act (Ill. Rev. Stat., 1986 Supp., ch. 85, par. 4—102) to all cases involving police car chases where a fleeing violator injures a third party,[3] instead of applying case law or the wilful and wanton liability standard of section 2—202 (Ill. Rev. Stat., 1986 Supp., ch. 85, par 2—202). Section 4—102, entitled "Police protection," provides:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. This immunity is not waived by a contract for private security service, but cannot be transferred to any nonpublic entity or employee." (Ill. Rev. Stat., 1986 Supp., ch. 85, par. 4—102.)

A plaintiff may recover under this section only if it is determined that a municipality owed a special duty to the plaintiff. A special duty arises where the following requirements are met: " '(1) the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific

---

[3]Plaintiffs contended during oral argument that defendants did not raise section 4—102 as an affirmative defense in the trial court; however, plaintiffs did in fact do so in their motion for summary judgment.

acts or omissions must be either affirmative or wilful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality.' " *Marshall v. Ellison* (1985), 132 Ill. App. 3d 732, 737, 477 N.E.2d 830.

To do as defendants suggest would in effect constitute legislating on our part. Defendants ask us to completely ignore the wilful and wanton liability exception to the immunity of public employees enforcing laws pursuant to section 2–202 where those employees are police officers who are enforcing traffic laws. We note that both sections 2–202 and 4–102 were amended by Public Act 84–1431, effective November 25, 1986. "When a statute is amended after judicial opinions construing it have been published, the legislature is presumed to have acted with knowledge of those opinions." (*Leischner v. Daniel's Restaurant, Inc.* (1977), 54 Ill. App. 3d 568, 570, 370 N.E.2d 157; see also *Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 490 N.E.2d 88 (section 2–202 wilful and wanton standard applied); *Gillian v. Hanna* (1972), 6 Ill. App. 3d 18, 126 N.E.2d 526 (section 4–102 special duty exception applied).) If the legislature deemed no distinction existed between the general limited immunity for negligence granted to those public employees and municipalities who *must* enforce the laws (section 2–202) and the general absolute immunity to those persons or municipalities who *may or may not* provide police protection, etc., absent a showing of a special duty to a particular individual (section 4–102), it could have eliminated application of section 2–202 to police car chase cases by amending that section to exclude police officers enforcing traffic laws. Since it did not, we cannot do indirectly what it has declined to do directly.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ and PINCHAM, JJ., concur.