2021 IL App (2d) 210153
No. 2-21-0153
Opinion filed December 29, 2021

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| STACY JACKSON, as Supervised Administrator of the Estate of Marcie Lopez, Deceased, | ) ) ) ) | Appeal from the Circuit Court of Kane County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 20-L-154 |
| KANE COUNTY, THE KANE COUNTY SHERIFF'S OFFICE, KANE COUNTY SHERIFF'S DEPUTY MATTHEW SCHULTZ, and SERGEANT PAUL WARREN, | ) ) ) ) ) ) ) | Honorable Mark A. Pheanis, |
| Defendants-Appellees. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court, with opinion. Justices McLaren and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Stacy Jackson, as supervised administrator of the estate of her sister, Marcie Lopez, deceased, appeals from an order of the trial court granting the motion of defendants, Kane County, the Kane County Sheriff's Office, Kane County Sheriff's Deputy Matthew Schultz, and Sergeant Paul Warren, to dismiss her case with prejudice pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2020)). On appeal, plaintiff argues that the motion to dismiss was erroneously granted because (1) a genuine issue of material fact

existed as to whether Schultz's and Warren's actions during the police pursuit that resulted in Lopez's death were willful and wanton and (2) the trial court ruled contrary to established case law. For the reasons set forth below, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3      Plaintiff filed an eight-count amended complaint, charging Schultz and Warren with willful and wanton conduct that proximately resulted in the death of Lopez following the police pursuit. The complaint also sought recovery from Kane County and the Kane County Sheriff's Office, under the doctrine of *respondeat superior*

¶ 4      The complaint alleged in part as follows. On June 10, 2019, Schultz attempted to pull Lopez over for squealing her vehicle tires as she made a right turn onto Claim Street. Schultz flashed his emergency lights and chirped his siren; however, Lopez did not stop her vehicle but continued driving eastbound on Liberty Street. At 8:12 p.m., Schultz notified KaneComm (Kane County Emergency Communications Center, a multi-jurisdictional dispatch center) that the vehicle was "not stopping." Schultz fully activated his emergency lights and sirens and continued to follow Lopez in an eastbound direction toward the intersection of Liberty Street and Farnsworth Avenue. At 8:13 p.m., Lopez activated her left turn signal, stopped at Liberty Street's red light, and waited to make a left turn onto Farnsworth Avenue. Schultz stopped behind her. Once the light turned green, Lopez made a left turn onto Farnsworth and then immediately accelerated her vehicle to 78 miles per hour. Schultz, while pursuing Lopez's vehicle, reached a speed of approximately 67 miles per hour. At this time, Schultz told KaneComm that Lopez was "probably about 80 [miles per hour]"and that he was "falling back." At 8:13 p.m., Lopez lost control of her vehicle, hit the center median on Farnsworth Avenue, and was ejected from her vehicle. Lopez died as a result of the crash.

¶ 5     Defendants filed a motion to dismiss pursuant to sections 2-615(a) and 2-619(a)(9) of the Code (*id.* §§ 2-615(a), 2-619(a)(9)). The trial court, without a hearing, granted defendants' motion with prejudice, pursuant to section 2-619(a)(9),[1] holding that "[p]laintiff's pleadings did not state allegations sufficient that rise to the level of willful and wanton conduct that could avoid dismissal with prejudice under Section 2-619[a](9)."

¶ 6                                    II. ANALYSIS

¶ 7     In the matter before us, plaintiff disputes whether the trial court properly granted defendants' section 2-619(a)(9) motion to dismiss her amended complaint. The trial court found that, when read together, sections 2-109 and 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2-109, 2-201) (West 2020)) immunize a public entity from liability for the discretionary acts or omissions of its employees who are acting within the scope of their employment, whether they function singly or jointly, or in collaboration with other public employees. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 118 (2008); *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 496 (2001). The court recognized that sections 2-109 and 2-201 did not immunize willful and wanton conduct, and the court granted defendants' motion to dismiss on the grounds that defendants were acting within the scope of their employment and the amended complaint failed to sufficiently allege facts to support that they acted willfully and wantonly. Thus, the court found that defendants were entitled to immunity under sections 2-109 and 2-201.

---

[1] The trial court ruled that deciding the case under section 2-619 rendered plaintiff's section 2-615 motion moot.

¶ 8 According to plaintiff, the trial court improperly dismissed her amended complaint when it decided disputed factual issues in granting defendants' motion under section 2-619(a)(9). Defendants respond that the trial court properly dismissed plaintiff's amended complaint under section 2-619(a)(9) because the complaint did not adequately plead or allege that they committed any willful and wanton conduct and, therefore, as an affirmative matter, they had immunity under the Act. For the reasons discussed below, we hold that the trial court properly dismissed plaintiff's amended complaint.

¶ 9                                      A. Standard of Review

¶ 10 The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). Specifically, a motion under section 2-619(a)(9) of the Code admits the legal sufficiency of the plaintiff's claim but asserts an affirmative matter outside of the pleading that defeats the claim. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008) (citing 735 ILCS 5/2-619(a)(9) (West 2006)). An " 'affirmative matter' [(in a section 2-619(a)(9) motion)] refers to a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16. Immunity under the Act is an affirmative matter properly raised in a section 2-619(a)(9) motion to dismiss. *Van Meter*, 207 Ill. 2d at 377.

¶ 11 In reviewing the grant of a section 2-619 motion, we must interpret the pleadings and supporting materials in the light most favorable to the plaintiff. *Shirley v. Harmon*, 405 Ill. App. 3d 86, 90 (2010). Moreover, since "[a] section 2-619 dismissal resembles the grant of a motion for summary judgment[,] we must determine whether a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal was proper as a

matter of law." *Id.* Once a defendant satisfies their initial burden of going forward on a section 2-619(a)(9) motion, the burden shifts to the plaintiff to establish that the defense is unfounded or that it requires the resolution of an essential element of material fact. *Van Meter*, 207 Ill. 2d at 377. Our review of a section 2-619 dismissal is *de novo*. *Id.* at 368.

¶ 12                                   B. Tort Immunity Act

¶ 13    Section 2-202 of the Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2020). The Act further provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." *Id.* § 2-109. A police officer is "executing" or "enforcing" a law, within the meaning of section 2-202, when he is engaged in an investigation in order to enforce traffic laws. *Fitzpatrick v. City of Chicago*, 112 Ill. 2d 211, 220-22 (1986). There is no dispute here that Schultz and Warren were public employees within the meaning of the Act. See *id.* § 2-202. Nor is there any dispute that Schultz was engaged in the enforcement of the law in attempting to stop the vehicle that Lopez was driving. Thus, for plaintiff to survive the section 2-619 motion to dismiss, she must establish at least a genuine issue of material fact as to whether Schultz's conduct in attempting to stop Lopez was willful and wanton. See *Urban v. Village of Lincolnshire*, 272 Ill. App. 3d 1087, 1093-94 (1995).

¶ 14    The Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2020); see *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 723-24 (2010). In an action for willful and wanton conduct, the plaintiff must establish (1) the existence of a duty,

(2) a breach of that duty, and (3) an injury proximately resulting from that breach. *Urban*, 272 Ill. App. 3d at 1094. Although whether conduct is willful and wanton is normally a question of fact for the jury, the court must first decide whether the plaintiff has alleged sufficient facts such that a jury could find willful and wanton conduct. *Doe v. Calumet City*, 161 Ill. 2d 374, 390 (1994). When a defendant raises tort immunity in a section 2-619 motion to dismiss, the court views the facts in the light most favorable to the plaintiff (*DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 504 (2006)), but the mere characterization of conduct as willful and wanton is insufficient to withstand a motion to dismiss (*Cipolla v. Bloom Township High School District No. 206*, 69 Ill. App. 3d 434, 437 (1979)). As we explain, we determine that the trial court properly dismissed plaintiff's amended complaint based on defendants' claim of immunity under the Act.

¶ 15    We note that the facts in this case are not in dispute. According to the amended complaint, Lopez did not pull over when Schultz first flashed his emergency lights and chirped his siren. Instead, she continued driving eastbound on Liberty Street toward Farnsworth Avenue. Schultz then fully activated his emergency lights and siren and followed Lopez to Liberty Street and Farnsworth Avenue, where they both stopped at that intersection for the red light. Lopez activated her left turn signal and remained stopped until the traffic signal turned green. Once the traffic signal turned green, rather than pull over and remain stopped, she accelerated at a high rate of speed. The record reveals that Schultz followed Lopez for less than a minute[2] before deciding to

---

[2] The time of "less than a minute" is based on plaintiff's amended complaint, which indicates that the pursuit both started and ended at 8:13 p.m. However, defendants argued in their motion to dismiss and their brief before this court that it was only a matter of two seconds after the traffic light turned green and Lopez accelerated to a high rate of speed before the crash.

pull back from the pursuit, and before Lopez struck the median, crashing her vehicle.

¶ 16   Plaintiff, relying on *Suwanski v. Village of Lombard*, 342 Ill. App. 3d 248 (2003), argues that defendants' section 2-619 motion to dismiss the amended complaint should not have been granted, because the question of whether conduct is willful and wanton is only for a jury to decide. In *Suwanski*, we reversed summary judgment for a municipality on the grounds that genuine issues of material fact were presented on both willful and wanton conduct and proximate cause. We noted that a "police pursuit is unique in the sense that it can occur only if two vehicles are involved, the car that is fleeing and the car that is chasing. It is essentially symbiotic; both vehicles are necessary to have a chase." *Id.* at 255-56.

¶ 17   We explained that, in the context of police pursuits, allegations of willful and wanton conduct may fall into one of three categories:

> "Some situations will be so benign as to clearly be, as a matter of law, below the theoretical minimum for willful and wanton conduct. Those cases should, of course, be disposed of by summary judgment. There may also be some cases where the circumstances are so egregious that one could say, as a matter of law, that the officer acted willfully and wantonly. The third possibility is those circumstances where the question of willful and wanton conduct is the subject of reasonable argument. It is those cases that cannot be decided as a matter of law and must be put to the jury." *Id.* at 257.

Plaintiff argues that Schultz undertook a high-speed pursuit of Lopez for squealing her tires, in direct violation of the Kane County Sheriff's Department's pursuit policy, and that this conduct was so egregious that it clearly evinced willful and wanton conduct.

¶ 18   We find *Suwanski* to be easily distinguishable from the case at bar because it was decided under a unique set of circumstances that are not present in this case. For example, in *Suwanski*, a

police officer pursued the vehicle for more than eight minutes and approximately 6½ miles. The speed during the chase reached 100 miles per hour. *Id.* During the pursuit, a car attempting to avoid a collision with the pursued vehicle crossed the oncoming lanes of traffic and crashed into a road construction sign. *Id.* at 251. The police continued the pursuit even after that collision, until the pursued vehicle crashed into another car, killing the drivers of both vehicles. Under the specific facts of that case, we reversed the trial court's order granting summary judgment for the city, finding that the plaintiff presented a question of fact for the jury on the issue of whether the officer engaged in willful and wanton conduct in pursuing the vehicle. *Id.* at 257.

¶ 19    Plaintiff has not alleged facts in her amended complaint to support a finding that Schultz recklessly operated his squad car. Unlike in *Suwanski*, there was no basis for finding that Schultz even engaged in a chase. Here, the crash occurred almost immediately after the traffic light turned green, and Lopez accelerated from a complete stop to a speed of approximately 80 miles per hour. No facts were pleaded alleging that Schultz disregarded any traffic control devices or followed Lopez's vehicle too closely. Nor did plaintiff allege facts establishing the distance traveled or whether either vehicle was nearly involved in another collision during the pursuit. Plaintiff did provide some of this information within the record on appeal and at oral argument; however, factual allegations that do not appear on the face of the complaint or in other evidentiary materials considered by the trial court are beyond the scope of our review, even if they otherwise appear in the record. See *Vala v. Pacific Insurance Co.*, 296 Ill. App. 3d 968, 970-71 (1998) ("In conducting *de novo* review, the appellate court will examine the complaint and all evidentiary material before the trial court at the time of entry of the order ***."). Thus, *Suwanski* does not aid plaintiff's position.

¶ 20 Plaintiff next urges us to follow *Winston v. City of Chicago*, 2019 IL App (1st) 181419, where the trial court's grant of summary judgment for the city defendants was also reversed. Plaintiff contends that the facts here are analogous to those of the instant case. In *Winston*, officers pursued a suspect at 50 miles per hour while he was fleeing them at 80 miles per hour. The chase proceeded down a two-lane residential street with a 30 miles per hour speed limit. The suspect ran two stop signs and a red light and was subsequently involved in a crash that injured the plaintiff. The chase lasted for 20 seconds, it spanned only three blocks, and the officers violated their police policy during the chase. *Id.* ¶¶ 33-34. The court held that there was an issue of fact as to whether reasonable minds could find the pursuit willful and wanton and that it should be sent to the finder of fact. *Id.* ¶ 37.

¶ 21 Here, the undisputed facts differ significantly from the facts in *Winston*, in that plaintiff's amended complaint in the present case was not well pled. For example, plaintiff's complaint admits only factual conclusions that are unsupported by allegations of specific facts. Rather than plead the speed limit on Farnsworth Avenue, she simply concludes that Schultz was "grossly exceeding the speed limit." Nowhere in the complaint does plaintiff provide Farnsworth Avenue's specific speed limit. Further, plaintiff alleged that Schultz initiated the pursuit of Lopez simply by activating his emergency lights and siren while both vehicles were stopped. No facts were pleaded as to the actual amount of time Schultz followed Lopez's vehicle or the distance traveled.

¶ 22 Unlike in *Winston*, where the complaint alleged pursuit through strictly residential areas, plaintiff alleged that Schultz operated his vehicle along both commercial and residential streets. Plaintiff specifically identifies every street as being residential up to Schultz's attempt to stop Lopez's vehicle. Yet, plaintiff concludes that, when the stop was attempted, Schultz operated his vehicle along a "commercial and residential street," without identifying Farnsworth as being either

a commercial or a residential street.

¶ 23  The remainder of plaintiff's complaint suffers from the same lack of specificity, relying on speculation and conclusory allegations. Plaintiff's allegation that Schultz created an unreasonably dangerous condition by merely activating his emergency lights and siren while driving behind Lopez's vehicle is nothing more than pure conjecture and speculation. Importantly, both Lopez and Schultz were stopped at a red light prior to Lopez accelerating to 80 miles per hour, Schultz never matched Lopez's speed, and he was already "falling back" by the time Lopez lost control of her vehicle. Any inference that this conduct is willful and wanton would effectively entail that any officer merely signaling for a vehicle to pull over is acting willfully and wantonly. The tragic result of Lopez's crash does not transform Schultz's conduct from routine to willful and wanton, nor does her decision to accelerate from a full stop transform a traffic stop into a chase. In our view, plaintiff has pleaded no facts that could lead a reasonable person to find that Schultz's actions in following Lopez's vehicle exhibited an actual or deliberate intention to harm or a conscious disregard for the safety of either Lopez or others.

¶ 24  The remainder of plaintiff's case law is unavailing. In *Robinson v. Village of Sauk Village*, 2021 IL App (1st) 200223, ¶ 27, the court determined that summary judgment was precluded because a question of fact existed on whether the officers acted willfully and wantonly. There, the pursuit went through suburban streets, the fleeing vehicle exceeded 100 miles per hour, and the suspect and pursuing officers disregarded numerous red lights and stop signs, even driving into oncoming traffic and over medians. *Id.* ¶ 26. Here, less than one minute elapsed between Lopez accelerating and crashing, and plaintiff provided no allegations that Schultz ran red lights or stop signs. Further, the facts do not support that Schultz's pursuit caused Lopez to panic; they were at a full stop when she decided to accelerate to almost 80 miles per hour. Thus, plaintiff cannot show

a violation of the Kane County Sheriff's Department's pursuit policy.

¶ 25    Nor does *Lacey v. Perrin*, 2015 IL App (2d) 141114, help plaintiff. First, in the truest sense, *Lacey* is not a pursuit case. In *Lacey*, Officer Perrin, en route to join a pursuit in progress, was stopped at a stop sign about 10 feet from an intersection. With his emergency lights and siren activated, he proceeded into the intersection and struck a vehicle in which the plaintiff was a passenger. *Id.* ¶¶ 15-16. The plaintiff alleged that, as Perrin drove into the intersection, he was looking down, presumably not paying attention as he accelerated his squad car to the point of impact. *Id.* ¶ 44. Perrin testified that he was traveling 25 to 30 miles an hour—where the posted speed limit was 30—and that he entered the intersection—believing that it was clear—and collided with the plaintiff. *Id.* ¶ 43. We affirmed the trial court's grant of summary judgment for the defendants, because, similar to the situation here, the plaintiff could not demonstrate utter indifference or conscious disregard for the safety of others, as required to show willful and wanton conduct under the Act. *Id.* ¶ 45.

¶ 26    This court has considered several other cases where municipalities and their police were sued over police pursuits of vehicles. We believe they bear discussion here.

¶ 27    In *Urban*, 272 Ill. App. 3d 1087, the court found that the officers' conduct did not amount to willful and wanton as a matter of law. The pursuit in that case commenced when an officer pursued a driver on a motorcycle who was weaving in and out of traffic at a high rate of speed, ultimately leading to a high-speed chase that ended when the motorcycle crashed into an automobile, fatally injuring the passenger of the motorcycle. *Id.* at 1089-90. The officer had activated his flashing lights and pursued the motorcycle. After the motorcycle failed to stop, the officer engaged his siren. *Id.* Upholding the trial court's order granting summary judgment for the defendants, the court reasoned that the officer activated his emergency equipment immediately

after beginning the pursuit, the weather was clear and dry, and the traffic was light. *Id.* at 1096. The officer kept a safe distance from the motorcycle at a constant speed, and no reasonable jury could find that the officer "exhibited an actual or deliberate intention to harm or utter indifference to or conscious disregard for the safety of either [the motorcyclist] or the [passenger]." *Id.*

¶ 28    In *Laco v. City of Chicago*, 154 Ill. App. 3d 498, 503-04 (1987), the court affirmed the grant of summary judgment for the defendants, holding that the officer had not acted willfully or wantonly, even when his pursuit took place in a residential area. Traffic was light, the defendants did not encounter other drivers, the streets were dry and illuminated, and the weather was clear. Further, the pursuit covered only six city blocks. *Id.* at 504-05. While the fleeing car accelerated to 60 miles per hour, the defendants did not increase their speed past 45 miles per hour. *Id.* at 505. These facts are consistent with our holding here, in that Schultz followed Lopez for less than one minute, he never matched her speed, and there were no facts alleged about interactions with other cars or dangerous conditions. Even more telling here, plaintiff did not allege that Lopez was driving solely on residential roads and Lopez started fleeing from a full stop at an intersection after the light turned green.

¶ 29    Likewise, in *Hall v. Village of Bartonville Police Department*, 298 Ill. App. 3d 569, 571 (1998), the officer did not act willfully and wantonly even where he pursued a truck at up to 105 miles per hour. In affirming the trial court's grant of summary judgment, the appellate court explained that the truck driver, who was suspected of driving under the influence, accelerated after the officer activated his lights and siren. The officer's pursuit was "relatively brief" and occurred on a four-lane highway in a sparsely populated area. *Id.* at 573.

¶ 30    Furthermore, in *Shuttlesworth v. City of Chicago*, 377 Ill. App. 3d 360 (2007), where officers terminated a brief pursuit and the suspect kept driving at 80 miles per hour before causing

injury to another, the officers did not act willfully and wantonly under the Act. In *Shuttlesworth*, the officers stopped a Chevrolet Monte Carlo because the license plates on the vehicle were registered to a different model of car. *Id.* at 361. The driver of the Monte Carlo fled the stop, driving toward one of the officers as he did so. The officers then activated their emergency lights and siren and started pursuing the vehicle. *Id.* at 362. The officers pursued the fleeing Monte Carlo on a residential roadway where the posted speed limit was 25 miles per hour: the patrol car reached speeds of approximately 40 to 50 miles per hour and the Monte Carlo, while weaving side to side between the westbound and eastbound lanes, reached speeds of up to 80 miles per hour. *Id.* The officers terminated their pursuit once it appeared that the Monte Carlo was too far ahead to give further chase. *Id.* A few seconds later, the driver of the Monte Carlo swerved into an oncoming lane, colliding with an automobile driven by the plaintiffs. *Id.* at 363.

¶ 31    The plaintiffs brought suit against the officers and the city for injuries suffered as a result of the collision due to the high-speed car chase, alleging that the officers' actions amounted to willful and wanton misconduct. *Id.* at 361. In affirming summary judgment for the defendants, the court reasoned that the entire pursuit lasted 30 to 40 seconds and there was " 'very little traffic' " during the pursuit. *Id.* at 366. There was no evidence of traffic violations by the officers, who claimed that they traveled within 10 miles per hour of the speed limit. The weather was clear, and the suspect was fleeing at a high rate of speed. Even construing the facts in the light most favorable to the plaintiffs, the appellate court found no evidence that the officers' conduct was willful and wanton. Rather, the court found that the act of initiating a pursuit of a fleeing vehicle, even at high-speed, did not establish that "the officers acted with an actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others" and, as such, no reasonable mind could find willful and wanton conduct. *Id.* at 368.

¶ 32    The facts and holdings of these cases cannot be distinguished from the present case, and we find that the trial court's ruling here is very much in line with the decided weight of authority.

¶ 33    The arguments made by plaintiff in this case are not unique. Essentially, plaintiff argues that the pursuit should not have occurred, due to the "minor" nature of Lopez's violation. We note that, in nearly every pursuit case in Illinois, the initial violation for which the pursuit was undertaken was a traffic-related violation. *Hall*, 298 Ill. App. 3d 569 (weaving and speeding); *Urban*, 272 Ill. App. 3d 1087 (speeding); *Laco*, 154 Ill. App. 3d 498; *Breck v. Cortez*, 141 Ill. App. 3d 351 (1986) (reckless driving). The theme that emerges from these cases is that, once the suspect flees, the "minor" traffic violations rise to the level of even more serious danger to the other drivers on the roadway. See *Laco*, 154 Ill. App. 3d at 505.

¶ 34    Plaintiff's argument that Schultz acted willfully and wantonly is premised on the sole fact that Schultz chose to follow a vehicle with his emergency lights and siren activated and the driver of that vehicle refused to stop for a traffic violation. According to plaintiff, Schultz never should have turned on his emergency lights and siren to stop a vehicle under these conditions. Plaintiff cites no authority for this proposition, and we therefore reject it. We agree with defendants that, if we were to accept plaintiff's argument, we would "create a police chase out of two parked cars stopped at a red light" whenever a police officer acts to effectuate a traffic stop and the motorist decides to flee. We agree that this is not the law of this State.

¶ 35    We note that the record before us consists of only the pleadings and the trial court's ruling granting the section 2-619 motion to dismiss. It does not include Schultz's dash cam video of him following and attempting to stop Lopez. While the trial court's order indicates that it "reviewed *** the attached exhibits, and other exhibits filed previously," it is not clear from this record if the video was actually admitted as an exhibit and thus reviewed by the trial court. This court will not

- 14 -

speculate whether the trial court reviewed and considered the dash cam video displaying what occurred during Schultz's attempt to stop Lopez's vehicle. It is plaintiff's duty to provide a full record on appeal, and we will resolve any doubt in the record against her. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant."). As aforestated, our review is *de novo*, "and thus we are examining the *** pleadings anew to determine whether a material question of fact exists." *Coole v. Central Area Recycling*, 384 Ill. App. 3d 390, 396 (2008).

¶ 36 Here, the pleadings, even when viewed in the light most favorable to plaintiff, establish that it was Lopez and not Schultz who exposed her and others to the imminent dangerous condition she experienced. Lopez's acceleration to 78 miles per hour endangered herself and the public. Schultz pursued Lopez only briefly, never matching her speed and quickly "falling back." The amended complaint does not allege that Schultz violated traffic laws, or encountered other drivers or dangerous road conditions. The complaint alleges simply that both vehicles stopped for a red light at Liberty Street and Farnsworth Avenue and, when the light turned green, Lopez sped off instead of pulling over. We disagree with plaintiff's allegation that Schultz initiated a pursuit of Lopez's vehicle as soon as he activated his emergency lights and siren even while they were both stopped at the red light. Even assuming *arguendo* that this was a pursuit, the pleading is clear that there was no chasing of Lopez's vehicle until she took off from the complete stop. Simply, plaintiff failed to allege facts that could show that Schultz acted with utter indifference or conscious disregard for the safety of others.

¶ 37  On a final note, in plaintiff's amended complaint, she alleged substantially identical conduct on the part of each governmental defendant relating to Schultz's involvement in pursuing Lopez's vehicle. Plaintiff alleged that Warren engaged in willful and wanton conduct when he failed to exercise supervisory control over Schultz's pursuit of Lopez and that the Kane County Sheriff's Office and Kane County were vicariously liable by and through their employees and agents, including KaneComm, for failing to notify any of Schultz's supervisors of the pending pursuit. A municipality is not liable for an injury resulting from its employee's act or omission if the employee is not liable. See 745 ILCS 10/2-109 (West 2020); *Andrews v. Metropolitan Water Reclamation District of Greater Chicago*, 2108 IL App (1st) 170336, ¶ 19. Inasmuch as we have already determined that the amended complaint failed to sufficiently plead a cause of action for willful and wanton conduct and that Schultz did not engage in a pursuit of Lopez's vehicle when he attempted to effectuate a traffic stop of her vehicle, we, therefore, need not address whether the other defendants engaged in willful and wanton conduct. See *A.D. v. Forest Preserve District of Kane County*, 313 Ill. App. 3d 919, 925 (2000); *Palmer v. Mt. Vernon Township High School District 201*, 169 Ill. 2d 551, 562 (1996).

¶ 38                    III. CONCLUSION

¶ 39  For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 40  Affirmed.

---

**No. 2-21-0153**

---

| | |
|---|---|
| **Cite as:** | *Jackson v. Kane County*, 2021 IL App (2d) 210153 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 20-L-154; the Hon. Mark A. Pheanis, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Jeffrey Friedman and Arijana Keserovic, of Law Office of Jeffrey Friedman, P.C., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of Geneva (Kathleen K. Watson, Assistant State's Attorney, of counsel), for appellees. |

---